## ALEXANDER WILSON vs. DAN HILL.

An insurance of a building against fire is a contract of indemnity with the owner or other person who, at the time when insurance is made, has an interest in its preservation; and if such owner, &c. part with all his interest in the building before it is destroyed or injured by fire, the right to the benefit of the insurance does not pass with the building to the purchaser.

The owners of a factory, which they had twice mortgaged, procured insurance thereon and of the machinery therein, to the amount of $ 2700 payable, in case of loss, to A. who had a mortgage on the machinery : They subsequently conveyed the factory to B. subject to the two mortgages thereon, and B. procured an assignment of one of those mortgages : The factory was afterwards burnt, and the insurers paid a total loss to A. whose mortgage on the machinery was only $ 2051 : The owners then became insolvent, and an assignee of their estate was appointed under *St.* 1838, *c.* 163, who brought an action against A. to recover the balance ($ 649) in his hands, and recovered judgment against him by default ; whereupon he paid to the assignee $ 626 and costs ; B. afterwards procured an assignment of the other mortgage on the factory, and brought an action against the assignee to recover of him the money which was paid to him by A. *Held,* that the action could not be maintained

ASSUMPSIT for money had and received. The case was submitted to the decision of the court on the following facts agreed by the parties :

On the 3d of January 1838, Benson, Phelps & Capron, of Mendon, were the owners of a factory building and real estate there situate, and of certain machinery in said building. The machinery was mortgaged by them to Hill & Chapin, commission merchants in Providence, R. I., to secure to them the general balance due to them. Said real estate was subject to two mortgages which are hereinafter mentioned.

On said 3d of January, Benson, Phelps & Capron, by their agents, the said Hill & Chapin, caused insurance against loss by fire to be effected by the Manufacturers' Mutual Fire Insurance Company of Rhode Island, for the term of one year then next ensuing, on said factory building and machinery, to the amount of $ 2700 ; to wit, $ 800 on the factory building, $ 1800 on the machinery, tools, &c. ; and $ 100 on a work-shop and machinery therein. By the terms of the policy, (a copy of which is made part of this case,) the money, in case of loss, was to be paid to Hill & Chapin.

On the 19th April 1838, Benson & Phelps, in considera

tion of $2800, conveyed all their interest in said factory build-
ing and real estate to William Capron, their cotenant; and on
the 10th of May following, Capron, in consideration of $3000,
conveyed all his interest in the same to the plaintiff; whereby
the plaintiff became sole owner thereof, subject to the said
mortgages thereon.

The said factory building and machinery were destroyed by
fire, in July 1838; and on the 3d day of October following,
the insurers paid over to said Hill & Chapin the said sum of
$2700, insured as aforesaid upon said property.

The said Benson, Phelps & Capron afterwards became
insolvent, and upon their application to the judge of probate for
the county of Worcester, their estate and effects were taken
possession of by a messenger on the first day of September
1838. A meeting of their creditors was duly called by said
judge of probate, under the insolvent act, (*St.* 1838, *c.* 163,)
and the defendant was at that meeting duly chosen their assignee.
He afterwards, as such assignee, demanded of Hill & Chapin
the money so paid to them by said insurers. Hill & Chapin
claimed to retain of it, and did retain of it, in their hands,
for what was due to them on their said mortgage, the sum of
$2051·41. The defendant commenced an action against them
for the balance of said money, at the June term 1839, of the
court of common pleas held at Worcester, and at the following
September term of said court, they were defaulted, and judg-
ment was rendered against them for $626·21, and $11·19
costs, which they paid to the defendant on the 24th of October
1839, and the defendant gave them a receipt therefor, and a
written promise to return the money to them, if Wilson (the
present plaintiff) should recover the same amount in a suit
which he had commenced, or was about to commence, against
them, or against Benson, Phelps & Capron.

Said property was subject, as before mentioned — 1st. to
a mortgage of one undivided third part of said factory building,
made by said William Capron to Arnold & Chadsey, to secure
the payment of $5000. This mortgage was assigned to the
plaintiff on the 12th of May 1838. — 2d. To a mortgage made

on the 24th of May 1837, by Benson & Phelps to William Whitney, of two thirds of said factory, &c. to secure the payment of $ 1721, and assigned to the plaintiff on the 17th of October 1840.

*Merrick*, for the plaintiff.

*C. Allen & Chapin*, for the defendant.

SHAW, C. J.   There are so many decisive objections to the plaintiff's right to recover, that it appears difficult to select the most prominent.   Even if the plaintiff had any interest in the loss under this policy, and any right to claim the amount of the insurance company, or of their assignees, Hill & Chapin, he would have no right to follow the money into the hands of the defendant.   Dan Hill, the defendant, had been duly and legally appointed the assignee of Benson, Phelps & Capron, the original assured, and in this capacity, and in behalf of the creditors, he demanded the balance of the money in the hands of Hill & Chapin, as a sum due to the insolvent debtors, whom he legally represented ; brought an action for that balance, and recovered it, under a judgment.   He cannot be considered as having received it to the use of the plaintiff ; there was no privity, in fact or in law, between these parties.   If Hill & Chapin were liable to the plaintiff, for the same money, they paid it to the defendant in their own wrong, and such payment would have been no defence against the action of the plaintiff, if he were legally entitled to it.

But it appears to us, that the claim of the plaintiff to recover in this action is founded upon an entire misapprehension of the nature and legal effect of a contract of insurance.   An insurance of buildings against loss by fire, although in popular language it may be called an insurance of the estate, is in effect a contract of indemnity, with an owner, or other person having an interest in the preservation of the buildings, as mortgagee, tenant, or otherwise, to indemnify him, against any loss, which he may sustain, in case they are destroyed or damaged by fire.   If, therefore, the assured has wholly parted with his interest, before they are burnt, and they are afterwards burnt, the underwriter incurs no obligation to pay any body.   The contract was to in-

demnify the assured ; if he has sustained no damage, the contract is not broken. If, indeed, on a transfer of the estate, the vendor assigns his policy to the purchaser, and this is made known to the insurer, and is assented to by him, it constitutes a new and original promise to the assignee, to indemnify him in like manner, whilst he retains an interest in the estate ; and the exemption of the insurer from further liability to the vendor, and the premium already paid for insurance for a term not yet expired, are a good consideration for such promise, and constitute a new and valid contract between the insurer and the assignee. But such undertaking will be binding, not because the policy is in any way incident to the estate, or runs with the land, but in consequence of the new contract. Even the assignment of a chose in action, with the consent of the debtor, and a promise on his part to pay the assignee, constitute a new contract, on which the assignee may sue in his own name. *Mowry* v. *Todd*, 12 Mass. 281.

For the general principles herein stated, we would refer to the authorities cited by Mr. Chapin. *Lynch* v. *Dalzell*, 3 Bro. P. C. (1st ed.) 497. *The Sadlers' Company* v. *Badcock*, 2 Atk. 554. Marshall on Ins. (3d ed.) 800 – 807. *Carroll* v *Boston Marine Ins. Co.* 8 Mass. 515. *Ætna Fire Ins. Co.* v. *Tyler*, 16 Wend. 397.

These considerations, however, do not apply to a case, where the assured, after a loss, assigns his right to recover that loss ; it would stand on the same footing as the assignment of a debt or right to recover a sum of money actually due, which, like the assignment of any other chose in action, would give the assignee an equitable interest and a right to recover in the name of the assignor, subject to set-off and all other equities.

All the considerations, applicable to the assignment of a personal contract of indemnity, apply with still greater force to a case of mutual insurance, where each and all the members have an interest in knowing their associates and in deciding who shall become members. In the present case, even if the general principle were less clear, there is a provision in the by-laws, which are referred to as part of the contract, (art 12.) that

" any person selling his property, may surrender his policy and receive back his deposit note ;" a clear implication, that the right to the benefit of the insurance does not pass with the estate to the purchaser. The principle of the contract is mutual indemnity. After such a sale and transfer of the estate, who is to stand responsible to other members for their losses, during the continuance of the unexpired policy ? Not the seller ; because the consideration, on which he became liable, has ceased, and his notes are cancelled and given up, and his obligation discharged. Not the purchaser ; because he has never given any note pursuant to the by-laws and terms of the contract, nor in any way bound himself to contribute to the losses of others of the company.

Besides ; indorsed on the policy, or annexed to it, is a blank form, first of a formal written permission, to be executed by the officers of the company, authorizing an assignment of the policy, and the form of an actual assignment by the assured. This operates, at least by way of notice, that the policy was not to be assigned, without the expressed consent of the company.

But whatever might have been the effect of an assignment, either before or after the loss, and either at law or in equity, in fact no assignment was ever made by Benson, Phelps & Capron, to the plaintiff; and he can only claim, therefore, as assignee in law, in consequence of having been purchaser of the estate ; which has already been considered.

But then it is contended, that at the time when the company paid the amount of the loss to Hill & Chapin, for the original parties insured, in consequence of their transfer of the estate, before the loss, they could not legally recover, and therefore the money was voluntarily paid by the company, and must be deemed to have been paid, subject to the prior lien of Hill & Chapin, the agents, equitably for the use of the plaintiff, who had become the purchaser of the estate. I do not think we have the facts stated with sufficient fullness and accuracy to enable us to judge whether the assured had parted with all their nterest, at the time of the loss. It is stated, that the plaintiff had purchased the estate, subject to the mortgages. If the

Wilson v. Hill.

assured remained still liable to the payment of the debts for which those mortgages were given as collateral security, then they still had an interest in the estate ; because a fire would im pair or destroy the value of the property appropriated to the payment of their debt ; and they therefore had an interest in its preservation, covered by the policy. One of the mortgages on the property was not assigned to the plaintiff till after the loss Nor does it appear that the assured had been exempted from the payment of any of the mortgage debts. We cannot therefore say with confidence that at the time of the payment by the company, they were not legally liable for such payment. At all events, they yielded to a claim of right, and paid to Hill & Chapin, pursuant to the provisions of the terms of the policy, to enure to them, to the extent of their lien ; and as to the balance, to the use of their principals. There are no facts on which to raise an implication that they voluntarily paid, upon considerations of policy, or intended to pay any thing to the use of the owner of the estate, or that they had any regard, in such pay ment, to any supposed equitable claim of the present plaintiff.

*Plaintiff nonsuit.*

*Note.* Since this case was decided, a similar question has been before the supreme court of the United States. *Carpenter* v. *Providence Washington Ins. Co.* 16 Pet. 495. Mr. Justice Story, who delivered the opinion of the court in that case, says—Policies of insurance against fire are not deemed in their nature incidents to the property insured ; but they are mere special agreements with the persons insuring against such loss or damage, as they may sustain, and not the loss or damage that any other person having an interest, as grantee, or mortgagee, or creditor, or otherwise, may sustain, by reason of the subsequent destruction thereof by fire.