JAMES G. BELL *v.* THE FIREMEN'S INSURANCE COMPANY OF NEW ORLEANS.

Parol evidence is admissible to prove an agreement to sell a vessel, anterior to the date of the written act of sale.

One who has agreed to sell a vessel, but has neither delivered it nor received the price, has an insurable interest, the vessel being still at his risk.

To entitle a party to recover on a policy of insurance, he must have had an interest in the thing insured at the time of the loss, as well as at the date of the insurance; and the character of this interest cannot be changed, between the date of the insurance and that of the loss, without the assent of both parties.

APPEAL from the Commercial Court of New Orleans, *Watts*, J.

GARLAND, J.   This is an action on a policy of insurance, made on the 5th of September, 1839, by the plaintiff, " on account of whom it may concern," lost or not lost, " on the body, engine, tackle, apparel, and other furniture" of the steam boat called the Bayou Sara, without regard to the name of the master by whom she might be commanded, for the space of twelve months, at a premium of ten per cent.   The boat was valued at $20,000, and insurance made for $9000 by the defendants, and for a like sum by another company.   The risks insured against were of the sea, river, and fire, and the boat was to navigate the Mississippi, and its tributaries, with certain limitations as to streams and points on them.   There is no clause in the policy requiring the assent of the company to any assignment of it, nor forbidding the plaintiff to sell the boat.   On the 6th of September, 1839, the plaintiff, by a notarial act, sold and transferred all his right, title, and interest in the boat, to one Northam, for $18,000, payable in six, twelve, and

eighteen months, for which notes drawn by him, and endorsed by different individuals, were given *in payment*, and a special mortgage given in the act on the boat, furniture, &c., to secure the payment of the notes. This mortgage was recorded in the proper office, and a memorandum of it endorsed on the enrollment at the Custom House, when Northam took out a coasting license. Northam commenced running the boat to various places out of the State ; but, in a few weeks afterwards, sold one-sixth of her to one Hooper, for the sum of $3000, payable in three instalments, for which he took his notes, and, in the act of sale, retained a mortgage to secure their payment, in which act, Bell's mortgage is mentioned, and Northam promised to pay it. This latter mortgage was also endorsed on the enrollment of the boat. Northam, as master, and Hooper, as clerk, continued to run the boat until about the last of February, 1840, when, at the instance of various creditors, claiming privileges for supplies, services, repairs, &c., the boat was libelled in the District Court of the United States, and taken into possession by the marshal, who placed a keeper on board, and had her secured at the opposite side of the river from this city, where she remained in charge of the keeper, Hooper being frequently on board, and other persons occasionally. On the 19th of April, 1840, the boat, being then advertised for sale under various executions, was consumed by fire, and totally lost. The plaintiff presented the protest of the keeper of the boat, with his preliminary proof and abandonment, and claimed the amount of the policy, which the defendants refused to pay.

In answer to the petition presented against them, the defendants admitted the policy, but denied their liability, as the plaintiff was neither owner nor part owner of the boat, nor had any insurable interest at the time of the loss, or previously. They further averred, that if the plaintiff had any interest at the time of effecting the policy, the nature and character of it were not fully communicated to them, so as to enable them to charge the proper premium, or to refuse the risk. They further stated, that the boat was intentionally set on fire by some person or persons interested in her ; but of this we see not the slightest evidence, and this defence is abandoned.

The answer then proceeds to state the various seizures of the

boat, the discharge of all the crew, the fact of her being moored on the other side of the river, far from assistance, with but a single person on board to guard and protect her ; wherefore defendants allege that she was unseaworthy; and further, that they are not liable for any loss whilst the boat was in the custody of the marshal, for whose acts and conduct they never undertook to answer.

The evidence does not show how the boat got on fire, but it was probably the work of an incendiary. The deputy marshal, and another person, who was sick, were on board at the time. The former testifies that he was awoke by an alarm of fire, from the crew of another steamer lying near. He immediately rushed to the spot, and attempted to extinguish the flames, but did not succeed, as there was gunpowder on board, which soon exploded. He says that if the crew of the neighboring boat had come to his assistance as requested, or if a crew had been on board, the fire could have been arrested.

The record and proceedings from the United States Court were given in evidence ; and in it we find a libel filed by the plaintiff, in which he claims the price of the boat from Northam as a debt entitled to the vendor's privilege, and secured by special mortgage, and, therefore, having a preference over the other creditors. In setting forth the character of his claim, the plaintiff states, in so many words, that on the 6th day of September, 1839, he was the owner of the said steam boat, and sold the same, by notarial act, to Northam. This libel is sworn to by the plaintiff. Upon these facts, and some others which will be noticed hereafter, the plaintiff had a judgment ; and the defendants have appealed.

The first point to which our attention is directed, is a bill of exceptions. On the trial, the plaintiff asked Hooper, who was a witness, whether the agreement between Bell and Northam to sell the boat was not previous to the act of sale, to which he replied in the affirmative. To this question and answer the defendants objected, on the ground that it was contradicting the act of sale, and that no evidence of what took place before, or after it, ought to be received ; but the court admitted it, because it showed a parol agreement before the written contract was executed. According to the doctrine established by this court in *Shields et al.* v. *Perry*

*et al.* (16 La. 466), the judge was correct in admitting the testimony, notwithstanding the objection ; but there is a much more formidable one to its effect, which is, that it conflicts with Bell's allegation in his libel, that there was no transfer of title until the 6th of September, 1839.

On the merits, the defendants aver :

*First.* That the plaintiff had not, at the time the policy was executed, any insurable interest in the steamer Bayou Sara, nor any at the time of the loss.

*Second.* That if the plaintiff had an insurable interest, he did not properly represent the same to the defendants ; that the nature of the interest was material to the risk ; and that the policy is, therefore, void.

*Third.* That there was a deviation.

*Fourth.* That the boat was unseaworthy.

Upon the first point, we have no doubt that, at the time the policy was executed, on the 5th of September, 1839, the plaintiff had an insurable interest in the boat. He was then the owner, and although he had agreed to sell to Northam, there had not been an execution of the contract. The sale was not complete. Neither the boat, nor the notes, had been delivered. The former was still at the risk of Bell, and had it been destroyed on that day, Northam would not have been bound to pay the notes, they being in the possession of the notary, to be delivered when the sale should be executed before him. He, therefore, could insure on that day. But say the defendants, admitting that he had an interest, as owner, at the time of executing the policy, which Bell, in his libel, says was the fact, (and we cannot see how he can avoid the effect of that statement,) yet he had no insurable interest at the time of the loss, as he had previously sold the boat, without the assent of the underwriters. The principle of law, that there must be an interest at the time of the loss, is as well settled, as that one must exist at the time of making the insurance ; and we must now inquire, whether the plaintiff had such an interest, at the time of the loss. As before remarked, there is nothing in the policy of insurance, which prohibits the plaintiff from selling the property and transferring the policy. The clause so common in policies, which makes them void in the event of a sale, without the

consent of the insurers, is omitted in this ; but this the defendants contend makes no difference, as the nature and extent of the interest is changed, or entirely lost. The plaintiff does not pretend to have had the interest of an owner, since the act of sale, but only that of a mortgagee, or vendor, with a privilege on the boat ; and this the defendants say is not covered by the policy, even if it exist. The question is, can the character of the interest be changed, without the assent of both parties, between the time of effecting the insurance and the loss. We think it cannot. If it were in the power of the party insured to change the character of his interest, he might easily make the contract more onerous to the insurer, though it may not be so in the present instance. The case of *McCarty* v. *The Commercial Insurance Company*, (17 La. 366,) seems to have settled the question. In that case, the plaintiff, who was the owner of a house, effected an insurance on it for one year. Shortly after he made a donation of it ; and, subsequently, the house was destroyed by fire. He brought a suit on the policy, and we held that the interest which existed and was insured, was entirely divested by the donation, and that the plaintiff could not recover, although he might have a contingent interest, arising from the possibility of the donation being revoked.

Admitting, for the sake of the argument, that the plaintiff has a mortgage, or privilege as vendor, on the boat, to what extent would a policy attach ? Clearly no farther than to secure the payment of the debt. If Northam, or any of the endorsers on the notes, have paid, or shall pay them, it is certain that the plaintiff can have no claim on the defendants ; and if the latter were to pay the amount of the policy, they would be entitled to the amount of the notes. It is not shown that Northam, and his endorsers, were insolvent ; nor that the money cannot be made out of them ; nor that proper diligence has been used to recover it.

The equity of this case is, in our opinion, with the plaintiff ; and there are some circumstances in it, which induce a strong suspicion that the defendants knew that there was an agreement to sell the boat to Northam, and that a contingent interest was really intended to be insured, although Bell's legal title was not technically divested ; but these circumstances are not sufficiently shown to

justify us in affirming the judgment. We think, however, justice requires us to remand the case for a new trial.

The judgment of the Commercial Court is, therefore, reversed, and the cause remanded for a new trial ; the appellee paying the costs of the appeal.

·C. M. Jones and L. Peirce, for the plaintiff.

Micou and Grymes, for the appellants.