[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 808 
This is an interpleader suit. The Union Central Life Insurance Company deposited in the registry of the court of De Soto Parish the sum of $2,500, alleging that it had no interest therein but that the amount was claimed by Mrs. Elizabeth Cubberly Harp and by Mrs. Evelyn Harp Browne, widow of Earle H. Browne, and the four children of Mrs. Browne, issue of her marriage with Earle H. Browne. The life *Page 809 
insurance company prayed that these parties be cited. They came into court and set up their claims. Mrs. Harp claimed one-half of the amount deposited, and Mrs. Browne and her children claimed the entire amount. There was judgment ordering that one-half the amount be paid to Mrs. Harp and one-half to Mrs. Browne and her children. Mrs. Browne and her children appealed from that judgment.
The facts and circumstances out of which this litigation arose are set forth in detail in an agreed stipulation of facts, which shows that Mrs. Mary A. Harp, who owned a plantation in the Parish of De Soto, borrowed $15,000 from the Union Central Life Insurance Company and to secure the loan executed a mortgage on her plantation in favor of the life insurance company. Mrs. Mary A. Harp died on August 17, 1931. The balance due on the mortgage in 1936 in principal and in interest amounted to approximately $17,000. At that time several of the notes were past due, and the mortgagee was threatening to foreclose.
On February 29, 1936, Mrs. Elizabeth Cubberly Harp, one of the parties to this litigation, and Earle H. Browne, whose widow and children are the other parties, entered into a contract, which was reduced to writing and signed before a notary public and two witnesses, by which contract they agreed to acquire for their joint account from the life insurance company the past-due mortgage notes and thereafter to foreclose the mortgage and acquire title to the Harp plantation at foreclosure sale. This contract was carried out, and the parties *Page 810 
purchased the plantation on January 23, 1937, at foreclosure sale. Thereafter, they owned the property in indivision until they partitioned it, and their title was encumbered to the extent of the remaining mortgage notes, which were held by the life insurance company, amounting at the time to approximately $13,462. This sum was evidenced by a series of notes, each for the sum of $1,415.90, maturing on March 1 of each year, beginning with the year 1938.
In the life insurance company's mortgage, it was provided that the main residence on the plantation should be insured against loss by fire in the sum of $2,500, and that the proceeds of the policy in case of loss should be paid to the mortgagee as its interest might appear, and that, in case the mortgagors failed to take out and pay the premiums on the fire policy, the mortgagee was authorized to have the residence insured, to pay the premiums thereon, and to charge the amount of the premiums to the mortgagors, which amount should be added to the principal of the debt and secured by the mortgage.
The mortgagee on two occasions had the dwelling on the plantation insured with the Hartford Fire Insurance Company, each of the policies being for $2,500 and each being for a term of three years. The first policy expired on February 26, 1937, and the second on February 26, 1940. The premium on each of the policies, $144.35, was paid by the mortgagee and charged by it as a part of the mortgage indebtedness against the Harp plantation. The stipulation of facts shows that Mrs. Elizabeth Cubberly Harp refunded to the mortgagee the *Page 811 
amount of the premium due on the policy which expired on February 26, 1937, and that on March 28, 1938, without consulting Mrs. Harp, Mrs. Evelyn Harp Browne, widow of Earle H. Browne, who had died in the meantime, reimbursed the mortgagee for the premium which it had paid on the policy which expired on February 26, 1940.
The dwelling covered by the fire policy was destroyed by fire in May, 1938. The fire insurance company paid to the life insurance company, the mortgagee, the sum of $2,500, the full amount of the insurance. This was paid to the mortgagee because the fire policy was held by the mortgagee by virtue of the endorsement on the policy. According to a stipulation in the mortgage, the main residence on the plantation was to be insured against loss by fire as additional security for the loan.
As already stated, the residence was destroyed by fire in May, 1938, at which time, according to the record, Mrs. Elizabeth C. Harp owned no interest therein, she having sold her interest to Earle H. Browne on November 29, 1937.
In order to determine correctly the issues involved, it is necessary to keep in mind certain specific dates. As we have stated, Mrs. Elizabeth C. Harp and Earle H. Browne acquired the entire plantation together with all improvements thereon, including the main residence, on January 23, 1937. On November 1, 1937, they entered into an act of partition, which act recites that they no longer wished to remain owners in indivision of said property and desired to divide amicably the surface of the same between them, reserving the minerals, *Page 812 
including oil and gas, in indivision. This act of partition was made in accordance with a previous contract entered into by and between these parties prior to the date on which the property was acquired by them at foreclosure sale, which previous contract was dated February 29, 1936. By the prior contract it was agreed between the parties that, if and when they acquired the property, they were to acquire it in indivision, and that they would, after it was acquired, execute an act of partition dividing the property in the following manner: "An East and West line is to be drawn through said property by a competent surveyor, selected by the parties hereto, at such a point so that there will be an exact and equal number of acres on the North and South side of the said East and West line."
It was expressly stipulated that Mrs. Elizabeth Cubberly Harp should receive that portion of the property north of said east and west line, and that Earle H. Browne should receive that portion of the plantation south of said east and west line.
It was further stipulated that Mrs. Harp was to receive, and become the owner of, the residence or house on the said property, which she and her husband then occupied as a home, "and if the said house should happen to fall South of the aforesaid line [i.e., on the part of the plantation set apart to Browne], then in that event, she shall have the right to move the same on the property that is North of the aforesaid line, and to off-set this transfer of the aforesaid residence to the said Mrs. Harp, and to adjust whatever difference *Page 813 
may be in the value of the property on the North and South sides of said line, the said Mrs. Elizabeth Cubberly Harp binds and obligates herself at the time of the execution of the deeds herein contemplated to pay over to said E.H. Browne, in lawful money of the United States, the sum of $1250.00."
Thus the clear intention of the parties was that Mrs. Harp should become the owner of the entire interest in the residence, but in order to do so she was to pay to Browne the sum of $1,250, one-half the estimated value of the residence.
This agreement was carried out in the act of partition, which was executed on November 1, 1937. The act of partition contains the following stipulation relating to the residence:
"And, Now, both appearers state that the residence of said Mrs. Harp is situated on the property herein allotted to the said E.H. Browne, and in order to preserve the said residence to the said Mrs. Harp the said E.H. Browne does hereby vest Mrs. Harp with the ownership of said residence and vests in her the right to remove the same across said dividing line on to her own property for a consideration of One Thousand Two Hundred Fifty Dollars ($1,250.00) to be paid as follows, to-wit:
"In Three (3) notes of said purchaser, dated of even date with this act, for the sum of Four Hundred Sixteen and 66/100 ($416.66) Dollars, Four Hundred Sixteen and 67/100 ($416.67) Dollars and Four Hundred Sixteen and 68/100 ($416.68) Dollars, which said notes have been made payable *Page 814 
to the said E.H. Browne and are conditioned to bear eight per cent. (8%) per annum interest thereon from January 23, 1937, and stipulate and provide for the payment of ten per cent. attorney's fee in the event of suit for the collection of the same after maturity."
It was further stipulated that the notes were to be secured by mortgage on the property conveyed to her in the act of partition. Thereafter (after the date of the partition), Mrs. Harp owned the entire interest in the residence, which was situated on Browne's land, but owed Browne $1,250 for the one-half interest in the residence which he had sold to her, Mrs. Harp being given the privilege of removing the residence across the dividing line onto her own land.
On November 29, 1937, 28 days after the act of partition was entered into and after Mrs. Harp had acquired from Browne his one-half interest in the residence, with the privilege of removing it across the dividing line onto her property, the parties entered into a written agreement of sale, which recites that: "The said Mrs. Harp, owner of the residence on the Harp plantation, which in the division of the said plantation was found to be on the portion belonging to the said E.H. Browne, does hereby sell, transfer and deliver unto the said E.H. Browne the above mentioned residence, intact and just as it stands for and in consideration of the sum of Seven Hundred and no/100 Dollars, cash in hand paid together with the surrender and delivery of the said Mrs. Harp's three notes of $416.68 each and dated November 1st, 1937 *Page 815 
which notes were given in payment of the one half interest in the residence owned by the said E.H. Browne at that time."
It was agreed that the three notes should be turned in to, and cancelled at, the office of the recorder of mortgages of De Soto Parish.
Clearly, therefore, after November 29, 1937, Earle H. Browne was the owner of the entire interest in this residence, and, as we have stated, the residence was destroyed by fire slightly more than five months later, about May 9, 1938.
Now, the question is whether Mrs. Harp was entitled to any interest in the proceeds of the fire policy which the mortgagee had collected and which was finally deposited in the registry of the court. The contention of her counsel is that she is entitled to one-half of the proceeds. As opposed to this contention, Mrs. Evelyn H. Browne, widow of Earle H. Browne, and the children of Mrs. Browne claim the entire proceeds.
The fire policy in effect at the time the residence was destroyed by fire in May, 1938, was dated February 26, 1937, and ran for three years. On the date the policy was written, the Harp plantation, together with the residence, was owned in indivision, share and share alike, by Mrs. Elizabeth Cubberly Harp and Earle H. Browne. This fire policy was a contract of indemnity by which the fire insurance company bound itself to indemnify the owners of the property covered against any loss or damage which they might sustain in case the property was destroyed by fire. At the time the policy was written and at *Page 816 
the time the loss was incurred, the fire policy was in the hands of the mortgagee, which still held certain mortgage notes against the plantation. When Mrs. Harp and Mr. Browne purchased the property at foreclosure sale on January 23, 1937, they did not assume the payment of the outstanding mortgage notes, but bought the property subject to the mortgage. The mortgagee refused to divide the debt, preferring to hold its mortgage against the entire property, regardless of any partition thereof which might be made subsequently, but did agree that Mrs. Harp might pay one-half of the outstanding notes and Earle H. Browne the other one-half.
The stipulation of facts shows that the entire outstanding indebtedness against the plantation was paid by Mrs. Harp and by Earle H. Browne (or by his widow and heirs), each paying one-half, and the mortgage was cancelled in the year 1940. The proceeds of the fire policy, however, were never credited on the indebtedness, but remained in the hands of the life insurance company, the mortgagee.
At the time the fire policy became effective in February, 1937, Mrs. Harp and Mr. Brown each had an interest in the policy. It covered property owned by them jointly.
When Mrs. Harp sold to Browne her one-half interest in the residence covered by the fire policy, there was no special assignment of the policy itself, and, because there was no such assignment, it is Mrs. Harp's contention that she retained her interest in the policy, and that, when the property was destroyed by fire, the proceeds of the policy inured to the joint benefit *Page 817 
of herself and the widow and heirs of Earle H. Browne, who had died in the meantime.
The rule that a policy of fire insurance is a personal contract and does not pass with the sale of the property covered, in the absence of a special assignment to the vendee, is universally recognized. King v. Preston, 11 La.Ann. 95; 8 Couch, Cyc. Ins. Law, Sec. 2014, page 6643; Newark Fire Ins. Co. v. Turk, 3 Cir.,6 F.2d 533, 43 A.L.R. 496; McIntire v. Plaisted, 68 Me. 363; Whitehouse v. Cargill, 88 Me. 479, 34 A. 276; Wilson v. Hill, 3 Metc. 66, 44 Mass. 66; Springfield Fire Marine Ins. Co. v. Boon, Tex.Civ.App., 194 S.W. 1006.
Even so, it does not follow that Mrs. Harp is entitled to one-half the proceeds of the fire policy in this case. The reason is that, at the time the residence was destroyed by fire, in May, 1938, she had no interest in the property covered by the insurance. She had previously divested herself of her interest therein by formal act of sale. Having no interest in the property destroyed, she has no interest in the proceeds of the policy.
In Bell v. Firemen's Ins. Co., 3 Rob. 423, it was held that, to entitle a party to recover on a policy of fire insurance, he must have had an interest in the thing insured at the time of the loss as well as at the date of the insurance, and in Macarty v. Commercial Ins. Co., 17 La. 365, it was held that, where a party has parted with all his insurable interest in property before its destruction, he cannot recover. See, also, Leavitt v. Western M. F. Ins. Co., 7 Rob. *Page 818 
351, and Pike v. Merchants' Mutual Ins. Co., 26 La.Ann. 505.
"The general rule being that there must be an insurable interest at the time of the loss as well as at the time of the making of the contract, a total extinguishment of the interest of insured in the property after the making of the contract and prior to the loss, as by an absolute transfer of the property, or an assignment in bankruptcy, will prevent recovery under the contract for the loss." 26 C.J., page 37, Section 23.
Many authorities are cited in support of this text, including the Louisiana cases cited hereinabove.
"A vendor retains an insurable interest in the property sold so long as he has any interest therein, in other words, so long as he would suffer by its destruction, as where he has taken back a mortgage for the purchase price, or where the contract of sale calls for a reconveyance of a lesser estate in the premises by the purchaser to him. Even though a purchaser in possession of realty under an executory contract of sale thereby received an equitable title to the property, the vendor has insurable interest in the buildings on the land by virtue of his legal title and the equitable lien which he holds as security for the purchase price. The interest of the vendor ceases, however, where all risk of loss rests on the vendee and no injury will result to the vendor from the destruction of the property." 29 Am.Jur., Section 345, page 306. See also 14 R.C.L., Section 93, page 916. *Page 819 
In the case at bar, there was an executed contract of sale, by which Mrs. Harp divested herself of all her interest in the residence for a valuable consideration, the receipt of which she acknowledged. She retained no mortgage for the purchase price. Therefore, her interest in the property ceased entirely, and thereafter all risk of loss rested upon the vendee, and no injury to her resulted from the destruction of the property.
Mrs. Harp's claim finds no support in law. When she sold her interest in the house to Browne, she received from him what she evidently thought was just and adequate consideration for what she owned. The destruction of the house by fire thereafter did not damage her. She suffered no loss because the property destroyed was not hers. She had been paid for her interest.
The proceeds of a fire insurance policy, in effect at least, take the place of the property destroyed. To permit Mrs. Harp to collect one-half of the proceeds of this fire policy after having already collected from Browne just consideration for her one-half interest in the property destroyed would be tantamount to permitting her to collect double compensation for her interest in the house.
For the reasons assigned, the judgment in favor of Mrs. Elizabeth Harp, decreeing her to be the owner of an undivided one-half interest in the sum of $2,500 deposited in the registry of the court of De Soto Parish by the Union Central Life Insurance Company, is reversed. And it is ordered that there be judgment in favor *Page 820 
of Mrs. Evelyn H. Browne, widow of Earle H. Browne, and Mary Browne Watts, Sallie Browne Place, Evelyn Browne, and Elizabeth Browne Hagewood, children and heirs of Earle H. Browne, decreeing them to be owners of the entire interest in the $2,500 so deposited, and ordering the clerk of court to pay to them the entire amount, less the costs of this litigation in the district court, which costs are to be paid out of the fund deposited. It is further ordered that the costs of this appeal be paid by Mrs. Harp.
HAMITER, J., absent.
 On Rehearing