## CLEAVER *v.* TRADERS' INS. CO.

*(Circuit Court, E. D. Michigan. July 8, 1889.)*

1. REMOVAL OF CAUSES—PRACTICE AFTER REMOVAL—PRIOR RULINGS BY STATE COURTS.
   When an action is removed from a state court to a federal court, the action continues the same, and all rulings made or opinions expressed in the highest court of the state are treated precisely as if they had been made in the federal court; otherwise, if the action in the state court be discontinued, and a new action begun in the federal court.

2. SAME.
   Hence, where, in an action upon a policy of insurance the supreme court of the state had held that certain conduct upon the part of the insurance company should be submitted to the jury as evidence of its intention to waive a forfeiture for over-insurance, *held*, that such ruling was binding upon the federal court.

3. INSURANCE—BREACH OF CONDITION—WAIVER OF OBJECTION.
   A forfeiture incurred by running a manufacturing establishment after the hour allowed by the policy should be taken advantage of at the first trial after knowledge of the facts is brought home to the insurance company, or it will be considered as waived.

*(Syllabus by the Court.)*

At Law.

This is an action upon a policy of fire insurance. The action was originally begun in the circuit court for Tuscola county, was tried in May, 1886, and a verdict returned for the plaintiff. The policy provided that if the insured should procure any other or further insurance upon the property insured, without the consent of the company written upon the policy, it should become void. There was a further provision that the agent of the company should have no authority to waive, modify, or strike from the policy any of its printed conditions, nor, in case the policy should become void by reason of the violation of any of its conditions, had the agent power to revive the same. The only defense set up upon the trial was an additional insurance of $2,000 in the Michigan Millers' Fire Insurance Company. This policy was put upon the property covered by the defendant's policy about nine months after the latter was written; and the consent of the company to the taking of this additional insurance was not indorsed upon the policy.

In reply to this defense, evidence was produced tending to show that the agent of the defendant company was informed of the plaintiff's intention to take out additional insurance upon his property, and that such

agent said that it would be all right, and even went so far as to help him fill out the application. After plaintiff received his additional policy, he informed the agent that he had procured it; to which the agent replied, "All right." Upon the trial in the circuit court, upon this state of facts, the plaintiff recovered a verdict, but, upon writ of error the supreme court reversed the case, and sent it back for a new trial; holding that the company was not estopped by the act of its agent to deny its liability and to declare the policy void, since it might limit the powers of its agent in any legal way, and make such limitation a part of its contract with the insured. 32 N. W. Rep. 660.

Upon a retrial of the case in the Tuscola circuit, the plaintiff offered additional testimony tending to show that the company, after being informed of the additional insurance upon the property destroyed, contrary to the terms of the policy, replied to its agent, in a letter, stating it supposed this would be a waiver of its rights on the subject of additional insurance, and sent an adjuster to the plaintiff, who requested the assistance of the insured in adjusting the loss, and offered him a portion of the policy in full satisfaction. The court directed a verdict for the defendant, when the case was again taken to the supreme court upon writ of error, and again reversed, (39 N. W. Rep. 571;) the court holding that the question whether the company had waived the condition of its policy in regard to additional insurance should have been submitted to the jury. Thereupon the defendant caused the case to be removed to this court under the local prejudice subdivision (3) of the Revised Statutes, (section 639,) where the cause was retried before a jury. Two defenses were made upon the trial in this court: (1) The over-insurance; and (2) the running of the flouring-mill after the hours limited in the policy. The case was submitted to the jury upon the facts raised under both defenses, and resulted in a disagreement.

It is now submitted to the court, upon a preliminary hearing, to determine the questions of law in the case as the basis of the ruling upon a second trial.

*T. W. Atwood* and *C. P. Black*, for plaintiff.

*L. D. Norris*, for defendant.

BROWN, J. Defendant claims that, the taking of the second policy having been fully established, there is no evidence which would authorize a jury to find that the company waived the forfeiture of the policy by reason of such over-insurance, and, inferentially, that the supreme court was wrong in holding that there was.

In reply, it is insisted by the plaintiff that the ruling of the supreme court in this connection is *res adjudicata*, and that we are bound by the construction given by that court to the evidence upon the subject of waiver. We think the plaintiff is correct in this contention. In the case of *Loomis* v. *Carrington*, 18 Fed. Rep. 97, decided some years ago by this court, we had occasion to hold that in cases removed from a state court this court will not review the orders made prior to the removal, but will take the case precisely as it finds it, accepting all prior

decrees and orders as adjudications in the cause. In this case the judgment of the federal court had been garnished by a proceeding in the state court, and that court had made an order upholding such proceeding; and it was held that, although our own opinion might be that a judgment of the federal court could not be garnished by the process of a state court, yet that we ought to decline to review the propriety of this order. This principle has frequently been applied in other cases.

Thus, in *Brooks* v. *Farwell*, 4 Fed. Rep. 166, it was held that an order of the state court overruling a motion to quash the service of a writ could not be reviewed, or in any manner set aside in the federal court. "We do not," says Judge HALLETT, "on the removal of a cause from a court of the state, review or attempt to reverse any proceedings that may have been had there before the removal of the cause into this court."

So, in *Smith* v. *Schwed*, 6 Fed. Rep. 455, it was held that, upon the removal of a cause from a state court, an injunction would not be dissolved upon the ground that the bill filed in the state court was not verified according to law and the practice of the courts of chancery.

In *Duncan* v. *Gegan*, 101 U. S. 810, it was held that proceedings had in a cause were not vacated by its removal from a state court to the circuit court. "The circuit court," says the chief justice, "when a transfer is effected, takes the case in the condition it was when the state court was deprived of its jurisdiction. The circuit court has no more power over what was done before the removal than the state court would have had if the suit had remained there. It takes the case up where the state court left it off." See, also, *Werthein* v. *Railway Co.*, 11 Fed. Rep. 689; *Milligan* v. *Manufacturing Co.*, 17 Fed. Rep. 465.

These cases, it is true, apply to interlocutory orders made in the state court, but the precise question involved in this case appears to have been settled in the recent case of *Williams* v. *Conger*, 125 U. S. 397, 418, 8 Sup. Ct. Rep. 933. This case was originally tried before a jury in a state court, and, being taken to the highest court of the state, that court ordered a new trial, deciding that a certain document was admissible in evidence as an ancient deed. Afterwards the cause was removed to the circuit court of the United States, and it was held that the decision of the state supreme court upon the question of admissibility was binding upon the courts of the United States. In delivering the opinion, Mr. Justice BRADLEY remarked that "if the action had originally been brought in the circuit court upon proper jurisdictional grounds, and had been tried as it was in the state court, and if, on a writ of error from this court, we had decided as the supreme court of Texas did, we should have felt bound by our first decision. We would not have allowed it to be questioned." "The present case is in exactly the same category. The removal of the cause from the state court does not put us in the position of a court of review over the supreme court of Texas. When it acted, it was the highest court that could act in the cause, and stood in precisely the same position that we stand now. Its action must be accepted by us as that of a court having plenary and final jurisdiction." We think this case is decisive of the one under consideration. Had this

case been originally commenced in this court we should have felt at liberty to review the ruling of the state court, as we have sometimes done where the decision of the state court was adverse to the plaintiff, and he has discontinued and begun again in this court. The case of *Bucher* v. *Railroad Co.*, 125 U. S. 555, 8 Sup. Ct. Rep. 974, is an illustration of this principle. This was an action to recover damages for personal injuries inflicted upon the plaintiff while he was traveling as a passenger upon a railroad train. Before the commencement of the action the plaintiff had sued defendants upon the same cause of action in the state court, and had obtained judgment against them, which was reversed by the supreme court of Massachusetts, and the case remanded for a new trial. The plaintiff thereupon became nonsuit, and began the action in the federal court. The question was whether the plaintiff could recover for an injury sustained while traveling upon Sunday. The state court held that the facts set out in the bill of exceptions did not show that the plaintiff was traveling, at the time of the accident, either from necessity or for charity. The federal circuit court followed this ruling, upon the ground that the same question having been submitted to the jury in the state court, and having been passed upon by the supreme court of the state, it felt itself bound by that adjudication. The supreme court, however, held that it was not a matter of estoppel which bound the parties in the federal court, because there was no judgment entered in the case in which the ruling of the state court was made, but affirmed the action of the circuit court upon other grounds.

It results, then, that when an action is removed from the state court the action continues the same, and that all rulings made or opinions expressed in the highest court of the state are considered precisely as if they had been made here. We merely take up the case as it left the state court, and carry it on to its conclusion. If, however, the case in the state court is discontinued, and a new action begun here, such rulings are not binding upon us.

From this review of the law it results that in this case we are bound by the ruling of the state court to submit the evidence upon the subject of waiver to the jury, as that court decided that the circuit court for Tuscola county should have done. In this connection, however, we should feel at liberty to call the attention of the jury to the letter of January 25th, which seems to have been overlooked in the consideration of the case by the supreme court of the state.

2. The question of running after hours is a more serious one. There is a stipulation in the policy that if it (the insured property) be a manufacturing establishment running in whole or in part over, or extra, time, or running between 6 o'clock P. M. and 6 o'clock A. M., then, and in every such case, this policy is void, and all insurance thereunder shall immediately cease and determine. It was undisputed that upon the night of the fire the mill was run until about half past 9 o'clock. The evidence tended to show that at the time the adjuster Berne went to Caro to determine the amount of loss he inquired of one Wilders, who was the agent of the plaintiff, in regard to running the mill at night, and was in-

formed that he ran it until after 9 o'clock. There was further evidence tending to show that the plaintiff had a conversation with the agent of the company at the time the policy of which this was a renewal was issued, and that when the agent read it over to the plaintiff he told him that it would never do, because he sometimes ran the mill all night, and that the agent replied, "That is all right," and that he never heard anything from it. The court then asked the question whether this was the first time this defense had been made, to which counsel replied: "It is the first time it was ever known. The first time it came out was on the criminal examination at Caro for burning the building, when Wilders was put on the stand, and testified that the mill had run that night up to half past 9." The agent, who testified on behalf of the plaintiff, also said that he was satisfied that he knew the mill was being run at night: "It is not a very great ways to where I live. I certainly knew it at the time I wrote that letter to the company, because I had a talk with Mr. Wilders about when he left the mill, and what he was doing there that night. I knew that the mill was running,"—though he said he had no distinct recollection of being informed of the fact.

The fact that Quinn knew of this at the time the prior policy was taken out, or afterwards, we think, is immaterial, since his knowledge is of no greater weight than his express consent, and by the provisions of the policy he had no power to waive, modify, or strike from the policy any of its printed conditions, or to revive the policy after it had been forfeited. It will be observed that this view of the power of the agent was sustained by the state supreme court when the case was first before it, and we are as much bound by that ruling as we are by its subsequent ruling, that the evidence upon the subject of waiver was sufficient to be submitted to the jury, nor would the fact that Berne was subsequently informed that the mill was run by night be any evidence of a waiver since it would be nothing more than knowledge that the insured had voluntarily seen fit to terminate the policy. *Insurance Co.* v. *Watson*, 23 Mich. 488; *Insurance Co.* v. *Riker*, 10 Mich. 279; *Insurance Co.* v. *Fay*, 22 Mich. 467.

The real question connected with this branch of the case, as it seems to us, is this: Did the company have notice, at the time the case was tried in the state court, of this defense? If it did not, then, clearly, it is not estopped to set up that defense now. If it did, we are inclined to the opinion that it was bound to set it up as a defense at that time, and that it is estopped to do so now.

There is no doubt of the general rule that where a company intends to insist upon the failure to comply with the clause requiring proofs of loss to be furnished, and bases its refusal upon other grounds, it cannot set up upon the trial the non-receipt of proper proofs of loss.

We are inclined to the opinion that this principle ought to be extended to all defenses, not involving the merits, which are claimed to work a forfeiture of the policy, and that in justice to the plaintiff all such causes of forfeiture ought to be set up at the time the case is first tried, if the company is shown at that time to have had knowledge of them. In this case, it was asserted by counsel that they knew nothing of the fact

that the mill was run at night until the criminal examination, which took place after the trial in the state court; but the evidence of the plaintiff in this connection tends to show that Berne was informed of it when he went to Caro, to adjust the loss. If this be so, and we are correct in our impression of the law, the defense should have been made in the state court, and the defendant is estopped to make it here. *Cobbs* v *Association,* 36 N. W. Rep. 222; *Carpenter* v. *Insurance Co.,* 28 N W Rep. 749; *Insurance Co.* v. *Norton,* 96 U. S. 234; *Castner* v. *Insurance Co.,* 50 Mich. 273, 15 N. W. Rep. 452; *Insurance Co.* v. *Kittle,* 39 Mich. 51; *North Berwick Co.* v. *Insurance Co.,* 52 Me. 336.

In this connection, counsel for the plaintiff rely with great confidence upon the case of *Moulor* v. *Insurance Co.,* 111 U. S. 335, 4 Sup. Ct. Rep. 466. This was an action upon a policy of life insurance. Upon the first trial it went to the jury upon the single issue of an alleged breach of warranty. Upon the next trial a verdict was instructed for the defendant, which was set aside by the supreme court. Upon the next trial, evidence was offered of death by suicide, and it was held by the supreme court that the fact that it did not insist upon this defense upon the previous trials did not operate as a waiver. The case is distinguishable from the one under consideration in two important particulars: *First,* the report of the case does not show that the fact of suicide was known to the company at the time of the prior trials; *second,* the defense was one which went to the merits of the case,—such a defense as, in this case, that the plaintiff had burned his own property. It was a defense that went to the very basis of liability, and tended to show that the defendant was not responsible for that kind of loss. In delivering the opinion, the court confined itself to such defenses as involve the merits, and held that as to those defenses there was no waiver from the fact that it had neglected to insist upon them upon a former trial. In the case under consideration the fact that the plaintiff ran his mill after the hour specified in the policy is a technical defense, not involving the merits of the case, and not tending in any way to show that the defendant had suffered any actual injury or prejudice.