C. J. CLARKE ET AL. v. WESTERN ASSURANCE CO.

APPEAL BY PLAINTIFFS FROM THE COURT OF COMMON PLEAS NO. 2 OF ALLEGHENY COUNTY.

Argued November 2, 1891—Decided January 4, 1892.
[To be reported.]

1. Double insurance takes place when the assured makes two or more insurances, either simultaneous or successive, upon the same subject, the same risk, and the same interest. In such case, if there be no stipulation to the contrary, the respective insurers are liable pro rata, all the policies being considered as together making but one policy.

2. When two policies insure the same property, but one of them covers other property also, without specifying how much of the insurance applies to each property, a case of double insurance is not presented: Sloat v. Insurance Co., 49 Pa. 14. At all events, the doctrine of double insurance cannot be applied as to the whole of the more comprehensive policy.

3. The decision in Sloat v. Insurance Co., 49 Pa. 14, has not been overruled or its authority shaken by Merrick v. Insurance Co., 54 Pa. 277; Lebanon Ins. Co. v. Kepler, 106 Pa. 28, or any other subsequent case. On the contrary, it has been expressly recognized as law by later cases: Ogden v. Insurance Co., 50 N. Y. 388 (10 Am. Rep. 492; 65 N. Y. 20), disapproved, but distinguished.

4. A "Per Curiam" opinion is the opinion of the court in a case in which the judges are all of one mind, and so clear that it is thought unnecessary to elaborate it by an extended discussion. Such an opinion is not entitled to less weight, as an authority upon the questions involved, than any other: Per Mr. Chief Justice PAXSON.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS and MITCHELL, JJ.

No. 232 October Term 1891, Sup. Ct.; court below, No. 495 July Term 1890, C. P. No. 2.

On June 19, 1890, Charles J. Clarke, F. C. Miller, Mary L. Crossan, Annie M. Donaldson, Kate C. Hays, Virginia C. Dilworth, Alexina C. Blair, and J. N. Donaldson, committee of W. M. Crossan, a lunatic, brought assumpsit against the Western Assurance Company, of Toronto, Canada, upon a policy of insurance against fire issued by the defendant company to the plaintiffs. Issue.

VOL. CXLVI—36

Statement of Facts.

At the trial, on May 28, 1891, the following facts were shown:

The plaintiffs were the owners of the hotel property in Pittsburgh known as the Monongahela House. In 1886 or 1887, George S. Griscom, who was then lessee of the hotel, put into it a system of electric lighting apparatus. This was spoken of in the testimony as an "electric light plant," but it did not clearly appear whether it included any machinery for generating electricity, though the arguments of counsel seemed to indicate that it consisted solely of wires, lamps, shades, etc., and that the current by which the lamps were operated was supplied from an outside source. Griscom took out a policy of insurance in the defendant company upon his electric appliances. On the expiration of his term as tenant, these were purchased from him by the plaintiffs, and that policy was assigned to them. The policy in suit was taken out for the purpose of renewing that insurance, and was in the same form. By it the defendant insured the plaintiffs against loss by fire in the sum of $1,250 upon "electric lamps, shades, wires and other electric fixtures and appurtenances," while contained in the brick building known as the Monongahela House. The policy contained the following clause:

"This company shall not be liable under this policy for a greater proportion of any loss on the described property, or for loss by or expense of removal from premises endangered by fire, than the amount hereby insured shall bear to the whole insurance, whether valid or not, or by solvent or insolvent insurers, covering such property; and the extent of the application of the insurance under this policy, or of the contribution to be made by this company, in case of loss, may be provided for by agreement or condition written hereon, or attached or appended hereto."

By a fire which occurred on December 5, 1889, during the life of this policy, the property covered by it was injured to the extent of $2,120. The defendant before suit brought offered to pay the plaintiffs $390, which the plaintiffs refused to accept.

During the trial, the following agreement was entered into and placed on file:

"It is agreed between the parties to this suit that the sole question to be tried between them is whether the defendant company should pay upon the policy in suit without contribu-

tion from the other insurance companies holding, at the time of the loss, insurance on the fixtures of the Monongahela House, being the insurance companies, or any of them, whose names, number of policy and material parts of policy are set out in schedules attached hereto, and marked exhibits A, B, C, D and E.

" And it is further agreed, that if, under the evidence and the law of the case, the defendant company should be held liable solely, for the loss in question, that the costs of the trial shall be paid by the defendant; but if other companies should be found to have been liable to have contributed, and on the basis of such contribution defendant's liability at the time suit was brought did not exceed $390, then the plaintiffs shall pay the costs."

SCHEDULE A.

Policies to Mary L. Crossan, A. M. Donaldson, Kate C. Hays, Virginia C. Dilworth, Alexina C. Blair, and J. N. Donaldson, committee of W. M. Crossan, a lunatic, in the following form :

" On their interest in the brick building with metal roof, including elevators, gas, steam, water, and other fixtures therein, known as the Monongahela House, etc., Pittsburgh, Pa."

| No of policy | Name of company | Amt. of policy |
|---|---|---|
| 16,259. | M. and M. Ins. Co., of Pgh. | $2,500. |

and nineteen others, in various amounts aggregating $79,000.

SCHEDULE B.

Policies to F. C. Miller in following form :

" On his individual interest in the five-story brick building known as the Monongahela House, etc., Pittsburgh, Pa."

| No. of policy | Name of company | Amt. of policy |
|---|---|---|
| 137. | Farragut. | $2,500. |

and thirteen others, in various amounts aggregating $36,500.

SCHEDULE C.

Policies to Charles J. Clarke in following form :

" On his individual interest in the five-story brick building known as the Monongahela House, etc., Pittsburgh, Pa. It is hereby understood and agreed that the elevators, gas, steam, water, and other fixtures are included in this insurance."

| No. of policy | Name of company | Amt. of policy |
|---|---|---|
| 10,699. | House Ins. Co., N. Y. | $5,000. |

and seven others, in various amounts aggregating $36,500.

Charge of Court below.

SCHEDULE D.

. Policies to Charles J. Clarke, F. C. Miller, Mary L. Crossan, A. M. Donaldson, Kate C. Hays, Virginia C. Dilworth, Alexina C. Blair, and J. N. Donaldson, committee of W. M. Crossan, a lunatic, in the following form :

" On household goods and furniture, stoves, wines and liquors, and similar articles, embracing the whole stock belonging to the assured, while contained in the brick building known as the Monongahela House. It is understood and agreed this policy covers also fixtures of every description while contained in buildings herein described."

| No. of policy | Name of company | Amt. of policy |
|---|---|---|
| 12,599. | Northern Ass'ce Co. of London. | $2,500. |
| 12,844. | "          " | $2,500. |

SCHEDULE E.

Policy to Charles J. Clarke, F. C. Miller, Mary L. Crossan, A. M. Donaldson, Kate C. Hays, Virginia C. Dilworth, A. C. Blair, and J. N. Donaldson, committee of W. M. Crossan, a lunatic, in the following form :

" On household goods, furniture and fixtures, stock and all stores generally, including wines and liquors and willows in the brick building occupied and known as the Monongahela House, etc., Pittsburgh, Pa.; other insurance permitted without notice till required; natural gas and electric light permit."

| No. of policy | Name of company | Amt. of policy |
|---|---|---|
| 12,885. | Home Ins. Co. | $2,500. |

—It was made to appear that there were in the hotel elevators, gas fixtures and chandeliers, office fixtures, desks, shelving, etc., which belonged to the plaintiffs.

At the close of the testimony, the court, EWING, P. J., charged the jury in part as follows :

A great many technical defences were set up ; and yesterday during the progress of the case the time was taken up in trying them, until they agreed to come to their supposed honest, genuine defence on the merits on this clause of the policy. And I say, prima facie if there were no facts in the case other than the insurance, the fire, and the loss to an amount beyond the policy, the defendants were bound to pay, and the burden is on them to show why they should not pay the sum of one thousand two hundred and fifty dollars. They say they have a good

defence on this clause of the policy : " This company shall not be liable under this policy for a greater proportion of any loss on the described property, or for loss by or expense of removal from premises endangered by fire, than the amount hereby insured shall bear to the whole insurance, whether valid or not, or by solvent or insolvent insurers, covering such property ; " and they say that the plaintiffs had a large amount of insurance covering this property.

The contention arises on the use of the term " fixtures," which is a term used generally as between landlord and tenant. Ordinarily it has not much relation to property in and about a house where the property belongs to the owner ; for instance, the question as to whether or not this chandelier in front of us is a fixture or not, is not an important one. If it was, as to the tenant occupying the property who had put it up, it would be something he could take away. Now the Supreme Court has said that it is not even a fixture. There has been a great deal of testimony and a large amount of discussion on the question, and we will not take time to go over it, but give you our conclusions, and say to you that it is not a very satisfactory case to us.

[We have concluded that there are two policies that the plaintiffs had on this property, which covered this particular property. It is not necessary that it should be merely the same subject matter, if it is a policy that covered the property ; and I have some doubt whether the mere term " fixtures," in a policy where the owner of a building is insured would cover this. But the two policies in the Northern Assurance Co. of London, which have been given in evidence by the plaintiffs, specify certain fixtures, such as gas, water and a number of such things, ending up by saying " It is understood and agreed that this policy covers also all fixtures of every description while contained in the buildings herein described." I think that is sufficient to cover the electrical apparatus described here, and that the others are not. The question is, could the plaintiffs, if they were to sue these two companies on their policies, independent of their claim against the Western Assurance Company, defendant in this case, could they have recovered for the loss of these electrical appliances ? I think they could, under the evidence on the other policies. I think they could,

Arguments.

and therefore we instruct you that defendant has a defence to this extent : The three policies make $6,250 of insurance covering these electrical appliances; of that the defendants have $1,250, and they are therefore bound to pay the one fifth of this loss, which would be $424, with interest added on that from the date of bringing this suit, June 19, 1890. This instruction practically answers the points of the plaintiffs, and they are refused.] [4]

The plaintiffs request the court to charge :

1. That, under all the evidence, their verdict should be for the plaintiffs for the full amount of policy in suit, viz., $1,250, with interest from the nineteenth of June, 1890.

Answer : Refused.[1]

2. If the jury find from the evidence that the electric wiring and lighting apparatus were put in the Monongahela House by the lessee thereof, without any intention to make same part of the realty, then they are not fixtures, and their verdict should be for the plaintiffs in the full amount of the policy, viz., $1,250, and interest from June 19, 1890.

Answer: Refused.[2]

3. If the jury find from the evidence that the interests insured, or the subject matter insured under the other policies mentioned in schedules A, B and C, were different from those insured in the policy of defendant company in suit in this case, then there is no double insurance, and their verdict should be for the plaintiffs for the amount of the policy, viz., $1,250, and interest from June 19, 1890.

Answer : Refused.[3]

—The jury returned a verdict for the plaintiffs for $448. Judgment having been entered, the plaintiffs took this appeal assigning for error:

1–3. The answers to plaintiffs' points.[1 to 3]

4. The part of the charge embraced in [ ] [4]

*Mr. Thomas Patterson* and *Mr. W. R. Blair* (with them *Mr. J. C. Doty*, *Mr. Smith* and *Mr. W. S. Pier*), for the appellants :

1. The distinction which the court below drew between the two policies in the Northern Assurance Company, and the other policies mentioned in the schedules appended to the agreement of the parties, grounded upon the fact that in the former the

Arguments.

word "fixtures" is followed by the phrase "of every description," is unsound. A thing cannot be a fixture without being a fixture of some description, and if it is a fixture of any description, it is a fixture and that is the end of the matter. But there was no double or concurrent insurance on the electric lamps, shades and wiring insured by the defendant, at all : Sloat v. Insurance Co., 49 Pa. 15 ; Royal Ins. Co. v. Roedel, 78 Pa. 19 ; Lebanon Ins. Co. v. Kepler, 106 Pa. 28 ; Flanders on Insurance, 42.

2. The policies under consideration consisted of three classes. The first class, those named in schedules A, B and C, insured the buildings, etc.; the second class, included in schedules D and E, the furniture, etc.; while the third consisted of this specific policy upon the electric apparatus and nothing else. The word fixtures is at best a meaningless term. Granting that "electrical fixtures" may be used in a sense similar to that attached by vulgar usage to the term "gas fixtures," there were no electrical fixtures that would come within such a definition, the lamps being attached to wires that were simply twisted about gas chandeliers. Moreover, the clause of the policy relative to concurrent insurance, when fairly interpreted as a whole, does not prevent the plaintiffs from recovering the full amount of their insurance unless some agreement, limiting the amount to be contributed by the defendant, is proved. At all events, the court erred in giving binding instructions, and should have submitted the meaning of the doubtful word fixtures, in the other policies, to the jury. And the charge misquotes the language of the Northern Assurance Company policies.

*Mr. J. S. Ferguson* (with him *Mr. E. G. Ferguson*), for the appellee :

The case of Sloat v. Insurance Co., 49 Pa. 14, relied on by the plaintiffs, was practically decided upon the authority of Howard Ins. Co. v. Scribner, 5 Hill 298, which was distinctly overruled in Ogden v. Insurance Co., 50 N. Y. 388 (10 Am. Rep. 492; 65 N. Y. 20). Merrick v. Insurance Co., 54 Pa. 277, is in accord with the later New York decisions. And Royal Ins. Co. v. Roedel, 78 Pa. 19, was a Per Curiam decision. The case of Lebanon Ins. Co. v. Kepler, 106 Pa. 28, certainly ques-

tions the decision in Sloat v. Insurance Co., supra. The question involved in this case, is therefore at least an open one; and when we consider that the defendant insured upon the express condition that it should not be liable for a greater proportion of any loss than the amount insured by it should bear to the whole insurance, there is no hardship in applying to the plaintiffs the rule finally adopted in New York. Upon their individual policies the insurance was ample, and there was no possibility of a loss by them. The strict legal meaning of the word fixtures is not involved. It was manifestly used in a popular sense. And, instead of being injured by the judgment, the plaintiffs have recovered more than they were justly entitled to.

OPINION, MR. CHIEF JUSTICE PAXSON:

The plaintiffs took out a fire policy in the defendant company in the sum of $1,250 upon "electric lamps, shades, wires, and all other electric fixtures and appurtenances," while contained in the building known as the Monongahela House, in the city of Pittsburgh. The property insured by this policy was destroyed by fire on December 5, 1889, the amount of loss thereon being $2,120. This suit was brought to recover the amount of loss under the policy. Upon the trial below, the issue was narrowed down to the single question, was there a double insurance on the property?

The policy in question contained the following clause:

"This company shall not be liable under this policy for a greater proportion of any loss on the described property, or for loss by or expense of removal from premises endangered by fire, than the amount hereby insured shall bear to the whole insurance, whether valued or not, or by solvent or insolvent insurers, covering such property; and the extent of the application of the insurance under this policy or of the contribution to be made by this company, in case of loss, may be provided for by agreement or condition written hereon, or attached or appended hereto."

The whole amount of insurance on the buildings and contents was one hundred and seventy thousand dollars. This was made up of several policies issued to different owners for their individual interests therein. If there was a double insurance as to all of them, the amount the plaintiffs would be entitled to re-

cover in this suit would be the proportion that $1,250 bears to one hundred and seventy thousand dollars upon a loss of $2,120. In others words, they would get $7.50. The learned judge below held, however, that the double insurance only applied to two policies of $2,500 each, thus making the whole insurance upon this one item $6,250, and that the amount for which the defendant company was liable under this view was $424, with interest, for which a verdict was rendered.

The two policies referred to were those of the Northern Assurance Company of London. The property insured in these policies was described as follows : " On household goods and furniture, stoves, wines and liquors, and similar articles, embracing the whole stock belonging to the assured while contained in the brick building known as the Monongahela House. It is understood and agreed this policy covers also fixtures of every description while contained in buildings herein described." It will be seen at a glance that to apply the doctrine of double insurance to the whole of the policies issued by the Northern Assurance Company of London would work palpable injustice, for the reason that those policies cover other property not embraced in the special policy·issued by defendant company, and there is nothing in the record to show how much of those policies was applicable to " electric lamps, shades, wires," etc., and how much was applicable to the other property covered thereby. To say, therefore, there was double insurance to the whole amount of those policies, as before observed, would work injustice, and lead to a result not probably contemplated by the parties. No better illustration of this view can be given than the one before stated, viz., that, had all the policies contained this provision, the plaintiff would have recovered $7.50, or a dividend upon the premiums paid by him.

In Sloat v. Insurance Co., 49 Pa. 14, there was a policy of insurance in one company which covered the building only of the party insured, and a subsequent policy in another company covered the building, machinery, shafting, belting, tools, lathes, planes, drills, and stock finished and unfinished; and it was held that it was not a case of double insurance. The opinion in that case was delivered by Justice READ, who cites and approves the definition of "double insurance" as given by Mr. Arnold, as follows : "Double insurance takes place when the

assured makes two or more insurances on the same subject, the same risk, and the same interest. If there be double insurance, either simultaneously or by successive policies, in which priority of insurance is not provided for, all are insurers and liable pro rata. All the policies are considered as making but one policy, and therefore any one insurer who pays more than his proportion may claim a contribution from others who are liable. Fire policies usually contain express and exact provisions upon this subject." This case was decided in 1865. Justice READ cites Howard Ins. Co. v. Scribner, 5 Hill 298 a case decided twenty-one years before that time, and says: "I cannot find that this decision has ever been impugned or denied by any judicial tribunal in the state of New York."

Sloat v. Insurance Co. has been the law of this state for over a quarter of a century, and we would not disturb it now, unless for grave reasons. It has been accepted and acted upon in the adjustment of losses. Moreover, it has been expressly recognized as law by later cases. It was contended that Merrick v. Insurance Co., 54 Pa. 277, overrules it, but this is not the case, as will appear from an examination of the later case, Royal Ins. Co. v. Roedel, 78 Pa. 19, where it was said: "We do not think Merrick v. Insurance Co., 4 P. F. S. 277, is sufficiently clear upon this point to overrule Sloat v. Insurance Co., 13 Wright 14." It is true, this is criticised as only a Per Curiam opinion, but why it should have less weight for that reason is not clear. A Per Curiam is the opinion of the court in a case in which we are all of one mind, and so clear that we do not think it necessary to elaborate it by an extended discussion. Not only was Sloat v. Insurance Co. not overruled in Royal Ins. Co. v. Roedel, but it was expressly followed in that case.

Lebanon Ins. Co. v. Kepler, 106 Pa. 28, does not, and was not intended to overrule Sloat v. Insurance Co. On the contrary, it is expressly recognized. The question of double insurance was not decided in that case. I quote from the opinion : "It is perhaps an open question whether, under the authority of Sloat v. Insurance Co., a double insurance exists in the case in hand, for the reason that the Kreidersville policy covered some articles not insured in the defendant's policy. But the language of condition 17 of the policy in suit, is broader in its terms than the clause of the policy in the case referred to. It

Opinion of the Court.

says, speaking of additional insurance, that it is ' on the property hereby insured, or any part thereof.' Without deciding this point, therefore, we will treat this as a case of double insurance to the extent that the Kreidersville policy covered the same property as was insured by the defendant company." The opinion then proceeds to show that, even if it was a case of double insurance, the defendant company was liable to the full amount of its policy.

I have endeavored to show that the authority of Sloat v. Insurance Co. has not been shaken by any subsequent decision of this court. We are now asked to overrule it, because Howard Ins. Co. v. Scribner, cited by Justice READ, has been overruled in New York by Ogden v. Insurance Co., 50 N. Y. 388. With the highest regard for the able and learned judges who decided that case, we are not disposed to follow them in this instance. We can only do so by overturning our own cases, and we have not been convinced that they are erroneous. Our own rule is a safe one, and easily understood. Had the policies of the London company covered nothing but the property insured by the defendant, there would have been no difficulty; nor would there have been, had those policies specified the sum applicable thereto. Aside from this, the case in hand differs in a material point from Ogden v. Insurance Co., supra. In that case there was a total loss, exceeding largely the whole amount of all the insurance. That this fact was not without weight with the court, is apparent from the following extract from the opinion: " We refrain from expressing an opinion now upon the several phases which might be developed under an insurance of this character in case of partial loss, confining our adjudication to the case before us, which was that of a total loss of the whole subject insured by all the policies."

In any view, the result reached in the court below was wrong, although this may have been caused by the manner in which the case was tried. To apply the whole of the London policies to the property covered by the defendant's policy would be unjust and illogical.

Judgment reversed, and a venire facias de novo<br>awarded.