## TURK et al. v. NEWARK FIRE INS. CO.

(District Court, E. D. Pennsylvania. January 8, 1925.)

No. 10892.

1. Insurance ⟨⟩504—Policy placed by vendor and not assigned not contributing insurance with that placed by purchasers, because of insurer's subsequent indorsement, with knowledge, changing mortgagee's interest.

Policy placed by vendor and not assigned or intended to be assigned to purchasers was not contributing insurance with that placed by purchasers, because insurer, after acquiring knowledge of transfer of the property, placed an indorsement on the policy changing name of one protected under mortgagee clause; contract between insurer and owner being separate from that between insurer and mortgagee under mortgagee clause.

2. Insurance ⟨⟩640(2)—Pleading of acquisition of knowledge by agent insufficient to show insurer charged with notice.

Averment that insurance company's writing agent acquired knowledge of the transfer of the property is too vague and insufficient to show, as is necessary to charge the principal with notice, that he acquired it in his capacity as agent, regarding a matter within the scope of his agency.

**3. Insurance ⬤388(1)—Willingness of insurer to name new mortgagee under mortgagee clause not waiver of any right against owner of property.**

Insurer's willingness to name a new mortgagee under the mortgagee clause after there was a different owner of the property than when policy was issued was not a waiver of any right it had against the owner.

**4. Estoppel ⬤52—Principle of waiver and estoppel stated.**

Waiver and estoppel are equitable doctrines founded on principle that one who has induced another into acting or forbearing to act may not to the other's injury set up a defense inconsistent with what he induced the other to rely on.

**5. Insurance ⬤388(3)—Insurer by course with mortgagee under mortgagee clause held not estopped to set up change of ownership against purchasers of property.**

Insurer in policy issued to vendor of insured property would not by course of conduct with mortgagee under mortgagee clause after sale of property be estopped to set up change of ownership as a defense against purchasers of the property not knowing of such insurance.

**6. Insurance ⬤288(1), 336(1), 504—To constitute "other insurance" or "contributing insurance" policies must cover same interest, property, and risk.**

To constitute "other" or "contributing" insurance, the policies must cover the same interest, the same property, and the same risk.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Other Insurance.]

**7. Courts ⬤372(6)—Policy constituting Pennsylvania contract to be construed according to Pennsylvania law.**

A policy on Pennsylvania property constituting a Pennsylvania contract is to be construed by federal courts according to Pennsylvania law.

**8. Insurance ⬤504—Policy on single tract to be exhausted before calling on policy on that and other tracts.**

Under Pennsylvania law, where insured has a policy covering several parcels, and others covering only one parcel, the latter must for loss on the parcel covered thereby be entirely exhausted before the former can be called on for contribution; the two classes of policies covering different subjects, risks, and interests.

**9. Accord and satisfaction ⬤25(2)—Insurance ⬤640(1)—Neither accord and satisfaction pleaded by affidavit of defense in action on insurance policy.**

Averment of affidavit of defense, in action on insurance policy, that at time loss was settled and adjusted it was agreed by the parties' representatives that the amount of the agreed loss was to be paid by apportioning it to $2,000 of insurance carried by plaintiffs on the property at time of fire (whereas the amount of insurance was only $16,000), *held* insufficient to plead a compromise or an accord and satisfaction.

**10. Insurance ⬤550—No estoppel of insured by filing, through mistaken belief, a proof of loss against a company not liable.**

Insured is not estopped to assert the truth against the company carrying insurance on his property simply by filing proof of claim against another company in mistaken belief that it also was liable on the loss.

**11. Accord and satisfaction ⬤16—Satisfaction necessary to give effect to accord.**

Satisfaction is necessary to give effect to an accord.

At Law. Action by Simon Turk and another against the Newark Fire Insurance Company. Sur rule for judgment for plaintiffs for want of a sufficient affidavit of defense. Judgment for plaintiffs.

Arthur S. Arnold, of Philadelphia, Pa., for plaintiffs.

Horace M. Schell, of Philadelphia, Pa., for defendant.

McKEEHAN, District Judge. This is a suit on a fire insurance policy for $6,000 issued by the defendant to the plaintiffs as owners of premises 316 Market street, Chester, Pa. A loss occurred amounting to $14,276, and the question is whether the defendant is liable for $^6$/$_{16}$ of this loss, or $5,353.50, as claimed by the plaintiffs, or for only $_6$/$_{21}$, or $4,079, as claimed by the defendant. This depends upon whether the total contributing insurance upon the plaintiff's interest in the property was $16,000 or $21,000.

On May 31, 1919, the property in question was acquired by the plaintiffs by purchase from Bristol R. Lord, Jr., and William K. Lord, whereupon the plaintiffs placed three insurance policies on the property, the policy in suit for $6,000; a policy of the Firemen's Insurance Company for $5,000; and a policy of the Colonial Fire Underwriters for $5,000 (a total of $16,000), all of which were in effect at the time of the fire, which occurred on February 17, 1924.

Immediately prior to the conveyance the Lord Bros. had owned 316 Market street and also the adjoining property, 318 Market street, and on April 20, 1919, had secured a policy for $5,000, covering both properties from the Springfield Fire & Marine Insurance Company; the policy being issued to Bristol R. Lord, Jr., and William K. Lord. The latter policy was not purchased by the plaintiffs from the Lord

Bros., was never assigned to the plaintiffs, and there was no agreement for its purchase by the plaintiffs. It appears from the pleadings that at the time of the conveyance the Springfield policy was in the possession of George K. Crozer, Jr., treasurer, as mortgagee under the standard New York mortgage clause. The affidavit of defense avers that a few weeks after the conveyance Messrs. Gray & Co., the writing agents of the Springfield Company "acquired knowledge of the transfer of the said property," and that subsequently, on October 24, 1919, Mr. Crozer delivered the policy to Gray & Co. for the purpose of having an indorsement placed thereon, changing the mortgagee's interest from George K. Crozer, Jr., treasurer, to J. Lewis Crozer Library, which change was duly made by indorsement attached to the policy. Upon these averments the defendant bases the contentions, first, that in view of Gray & Co.'s knowledge, this new indorsement, in spite of the change of ownership, rendered the policy valid as between the Springfield Company and the mortgagee, and that, being valid as to the mortgagee, it should, as between the parties to this suit, be considered as contributing insurance and pro rata with the policies carried by the plaintiffs on their property; second, that by the new indorsement, the Springfield Company ratified the transfer of ownership, and would be estopped from setting that up in a suit by the plaintiffs.

[1] The first argument is based, I think, upon a misconception of the contractual relationships that exist between an insurer and an insured owner on the one hand and the insurer and a mortgagee on the other hand. A mortgagee clause creates a new and separate contract between the insurer and the mortgagee, and effects a separate insurance of the interest of the mortgagee, not affected for the most part by any act or neglect of the mortgagor of which the mortgagee is ignorant. Syndicate Insurance Co. v. Bohn, 65 F. 165, 12 C. C. A. 531, 27 L. R. A. 614; Pennsylvania Co. for Insurance on Lives, etc., v. Aachen (D. C.) 257 F. 189. Whether the mortgagee can recover from the Springfield Company is immaterial. The Springfield policy contained the usual clause that it should be void "if the interest of the insured be other than unconditional and sole ownership." The mortgagee clause modified this provision only so far as the mortgagee was concerned. It provided that "as to the interest of the mortgagee" the policy should not be invalidated by a change in ownership providing the mortgagee notified the company of any change of ownership which might come to its knowledge, and providing also that, if the insurer should pay the mortgagee any loss under the policy and claim that as to the mortgagor or owner no liability existed, the insurer would, to the extent of such payment, be subrogated to all of the rights of the mortgagee. The owners insured by the Springfield Company policy were the Lord Bros. They conveyed the property to the plaintiffs, but no assignment of the policy to them was made or contemplated. The Springfield Company has no contractual relationship with the plaintiffs, and, as I say, its liability, if any, to the mortgagee is immaterial to this suit.

[2-5] The defendant's argument that the Springfield Company would be estopped in a suit by the plaintiffs to set up the change of ownership as a defense is, I think, equally without merit. In the first place, I agree with the learned counsel for the plaintiffs that the simple averment that in June, 1919, the Springfield Company's writing agents "acquired knowledge of the transfer of the said property" by Lord Bros. is too vague and is insufficient under the authorities to charge the Springfield Company. The agent's knowledge must have been acquired in his capacity as agent, regarding a matter within the scope of his agency, and the averment should be specific as to this. Again, the insurer's willingness to name a new mortgagee or the same mortgagee under another name, could scarcely be construed as a waiver of any right it had against the owner. Furthermore, waiver and estoppel are equitable doctrines, founded on the principle that one who has induced another into acting or forbearing to act may not, to the other's injury, set up a defense inconsistent with what he induced the other to rely upon. Defendant does not aver that the plaintiffs acted or forbore to act in the belief that they had an insurance policy with the Springfield Company. The affidavit does not even aver that the plaintiffs (or, for that matter, the defendant) knew of the existence of the Springfield policy, and the statement of claim expressly avers that the plaintiffs never knew of its existence until after the fire.

[6-8] The defense just referred to assumes, of course, that but for the alleged estoppel the Springfield Company would not be a contributing insurer. I think there can be no doubt as to this. To constitute "other" or "contributing" insurance the

policies must cover the same interest, the same property, and the same risk. Sloat v. Insurance Co., 49 Pa. 14, 88 Am. Dec. 477; Yanko v. Insurance Co., 31 Pa. Super. Ct. 1; Meigs v. Insurance Co., 205 Pa. 378, 54 A. 1053; King v. Lancaster, 45 Pa. Super. Ct. 464. The Springfield Company insured the interest of the Lord Bros. The loss was sustained by the plaintiffs, whose interest was not insured by the Springfield policy.

Even if the Springfield policy ran in favor of the plaintiffs, the defendant could not set up that policy in mitigation of its liability, for the reason that the policy sued on is a Pennsylvania contract, to be construed according to Pennsylvania law, and, as the policy sued on covered only 316 Market street, and the Springfield policy covered both 316 and 318 Market street, the Pennsylvania rule would be applicable that, where the insured has a policy covering several parcels of property and also specific insurance covering only one parcel, the latter must be entirely exhausted before the other policies can be called upon for contribution, the two classes of policies covering different subjects, risks, and interests. Meigs v. Insurance Co., 205 Pa. 378, 54 A. 1053; Zeigler v. Commonwealth Union Assurance Co., 38 Pa. Super. Ct. 532; Clarke v. Assurance Co., 146 Pa. 561, 23 A. 248, 15 L. R. A. 127, 28 Am. St. Rep. 821. It is true that Judge McPherson in Meigs v. London Assurance Co. (C. C.) 126 F. 781, declined to accept the Pennsylvania rule, holding that "the question is one of general commercial law upon which the federal courts are at liberty to entertain an independent opinion." But in Home Insurance Co. v. Baltimore Warehouse Co., 93 U. S. 527, 23 L. Ed. 868, upon which Judge McPherson relied, no question of the lex loci contractus was raised or considered, and I think it clear that the obligation of an insurance contract, like that of any other contract, rests upon the law under which the contract was made, and that the federal courts will not, under the pretext of a "general commercial law," read into such a contract something that was not intended by the parties. Northwestern Mutual Life Insurance Co. v. McCue, 223 U. S. 234, 32 S. Ct. 220, 56 L. Ed. 419, 38 L. R. A. (N. S.) 57. Indeed, it may be seriously doubted whether there is any such thing in this country as a "general commercial law." While the phrase is often used, probably as a result of Mr. Justice Story's opinion in Swift v. Tyson, 41 U. S. (16 Pet.) 1, 10

L. Ed. 865, it really means little more than that in some cases the federal courts will follow the decisions of state courts and in other cases will not. It would be difficult to add to what Mr. Chief Justice Mitchell said on the subject in Forepaugh v. Railroad Co., 128 Pa. 217, 18 A. 503, 5 L. R. A. 508, 15 Am. St. Rep. 672. The importance of adhering to the lex loci contractus in ascertaining the meaning of a contract could scarcely be better illustrated than by a case involving such a long-established and well-understood rule as the Pennsylvania rule just referred to.

[9-11] It remains to notice one further defense. The statement of claim avers that, after the fire, the plaintiffs, acting under mistaken advice that the Springfield Company was liable, filed proofs of loss with that company, and were later advised by their counsel that the Springfield Company was without liability to them. The affidavit of defense avers that at the time the loss was settled and adjusted "it was agreed by and between the General Adjustment Bureau, acting for and on behalf of the defendant, and the Pennsylvania Salvage Company, acting for and on behalf of the plaintiffs, that the amount of the agreed loss, to wit, $14,276, was to be paid by apportioning the said loss to $21,000 of insurance carried by the said plaintiffs upon said premises at the time of the said alleged fire." This averment does not sufficiently plead a compromise or accord and satisfaction. The plaintiffs are not estopped from asserting the truth simply by having filed a proof of claim against the Springfield Company in the mistaken belief that this company was liable. Baldi v. Insurance Co., 24 Pa. Super. Ct. 288; Penn Furniture Co. v. Insurance Co., 47 Pa. Super. Ct. 77. The affidavit of defense sets up no consideration for the alleged agreement either by way of advantage to the plaintiff or disadvantage to the defendant. It avers no change in the status quo of either party. No satisfaction is pleaded which is necessary to give effect to an accord. Diller v. Brubaker, 52 Pa. 498, 91 Am. Dec. 177; Martin v. Frantz, 127 Pa. 389, 18 A. 20, 14 Am. St. Rep. 859; Hosler v. Hursh, 151 Pa. 415, 25 A. 52; Fink v. Farmers' Bank, 178 Pa. 154, 35 A. 636, 56 Am. St. Rep. 746.

Judgment may be entered for the plaintiffs in the sum of $5,353.50, with interest from May 12, 1924, for want of a sufficient affidavit of defense.