## NEWARK FIRE INS. CO. v. TURK et al.

(Circuit Court of Appeals, Third Circuit. June 8, 1925. Rehearing Denied September 5, 1925.)

No. 3301.

1. **Insurance** ⊜124 — **Nature of contract; "policy of insurance."**

Defined broadly, a "policy of insurance" is a contract whereby, for an agreed premium, one party undertakes to compensate the other for loss on a specified subject by specified perils.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Policy of Insurance.]

2. **Insurance** ⊜199—**Undertaking is personal to insured.**

Indemnity against loss is the essence of a contract of insurance, and the undertaking is personal to the insured.

3. **Insurance** ⊜215—**Sale of insured property does not carry policy of insurance.**

A sale of insured property does not carry with it the policy of insurance.

4. **Insurance** ⊜215 — **Neither grantor nor grantee of insured property can recover insurance in absence of assignment.**

On a sale of insured property, in the absence of an assignment, the grantee cannot recover on the policy because the insurer has no contract with him, and the grantor cannot recover because he has sustained no loss.

5. **Insurance** ⊜581—**Mortgage clause creates separate contract with mortgagee.**

A mortgage clause of a policy, providing for payment of indemnity to the mortgagee in the event of loss, creates a separate and distinct agreement between the insurer and mortgagee, binding even after the insured owner has alienated his property.

6. **Insurance** ⊜504—**Policy obtained by grantors held not coinsurance with policies subsequently procured by grantees.**

The owners of mortgaged property insured the same; the policy containing a clause for protection of the interest of the mortgagee. They afterwards sold and conveyed the property subject to the mortgage, but did not assign the policy, and the grantees procured other insurance in their own name. *Held*, that the original policy ceased to be effective .except as to the mortgagee, and could not be counted as coinsurance with the later policies, each of which contained a provision limiting liability of the insurer to such proportion of any loss as its policy bore to the total insurance on the property, since that and the subsequent policies, though on the same property, covered different interests.

7. **Insurance** ⊜504—**Identity of interest is a requisite to contribution between policies.**

Contribution cannot be enforced between policies unless they cover the same interest.

In Error to the District Court of the United States for the Eastern District of Pennsylvania; Charles L. McKeehan, Judge.

Action by Simon Turk and another against the Newark Fire Insurance Company. Judgment for plaintiffs, and defendant brings error. Affirmed.

For opinion below, see 4 F.(2d) 142.

Horace Michener Schell, of Philadelphia, Pa., for plaintiff in error.

Mervyn R. Turk, of Chester, Pa., and Arthur S. Arnold, of Philadelphia, Pa., for defendants in error.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. This is a suit on a policy of fire insurance issued to the plaintiffs by the defendant company. Broadly stated, the question is whether another policy, issued by another company to predecessors of the plaintiffs in the title of the damaged property, covered the property, and whether, within the pro rata liability clauses of the two policies, there was double or contributing insurance. Arising on the plaintiffs' motion for judgment because of an insufficient affidavit of defense, in which, under the Pennsylvania practice, the facts are accepted as pleaded, the court decided the question against the defendant, and directed judgment for the plaintiffs. 4 F.(2d) 142. The case is here on the defendant's appeal.

Somewhat compressed, the facts are as follows: Bristol R. Lord, Jr., and William K. Lord (hereinafter called Lord Bros.) owned properties known as 316 and 318 Market street in the city of Chester, Pa. They mortgaged them to George K. Crozer, Jr., treasurer of the board of trustees, Crozer Theological Seminary, and delivered to him, as additional security, a policy of fire insurance for $5,000, obtained from the Springfield Fire & Marine Insurance Company, covering both properties, and containing a clause for his protection as mortgagee. Lord Bros. then sold one of the properties, 316 Market street, to Simon Turk and Phillip Saft, cum onere of the mortgage. The policy of the Springfield company did not figure in the transaction. It was not assigned to the purchasers, nor did they then have any knowledge of its existence. On taking title, Turk and Saft (now the plaintiffs) procured insurance from three companies, of which the Newark Fire Insurance Company (the defendant) was one, covering specifically 316 Market street, and aggregating $16,000. The policy issued to them by the defendant was for $6,000.

A fire occurred. Adjusters and agents, representing the plaintiffs and the defendant, fixed the damage at $14,276. The two other policies which the plaintiffs had obtained on acquiring the property contained clauses for the benefit of the mortgagee and had been delivered to him. After the fire, the plaintiffs requested him to loan them these policies to assist them in making their claims against the insurance companies. Responding, the mortgagee handed them the two policies they had asked for and, in addition, the policy of the Springfield company issued to Lord Bros. This was the first intimation to the plaintiffs of the existence of this policy. Having in hand four policies, three issued to themselves and one to Lord Bros., the plaintiffs, on the advice of insurance brokers, made claims against all four companies. Being later advised that they had mistaken their rights under the law, and that they could claim insurance only from the companies which had issued policies to them, the plaintiffs abandoned their claim against the Springfield company, and confined their claims to the three companies which had issued to them the three policies aggregating $16,000. Thereupon the defendant (and the other two companies) pointed out that their policies (as well as the policy of the Springfield company) contained liability clauses in the following language: "This company shall not be liable for a greater proportion of any loss or damage than the amount hereby insured shall bear to the whole insurance covering the property, whether valid or not, and whether collectible or not"—and took the position that the insurance of $16,000 issued to the plaintiffs, and the insurance of $5,000 issued to Lord Bros. made a total insurance of $21,000, and that, according to a proper reading of the quoted clause, the defendant in this case is liable for only so much of the agreed loss of $14,276 as the face of its policy for $6,000 bears to the total insurance of $21,000; or, in other words, that it is liable for six twenty-firsts and not six-sixteenths thereof. When sued, the defendant reiterated its position as a defense. The soundness of this contention depends, of course, upon whether the Springfield insurance, in the circumstances, covered the property, and is accordingly contributing insurance.

[1-4] In order to decide this question, we must pause for a moment and inquire how the law regards a policy of insurance. Defined broadly, it is "a contract whereby, for an agreed premium, one party undertakes to compensate the other for loss on a specified subject by specified perils." Bouvier's Law Dictionary, 1613; Dover Glass Works Co. v. Ins. Co., 1 Marvel (Del.) 32, 29 A. 1039, 65 Am. St. Rep. 264. Indemnity against loss is the essence of a contract of insurance. The undertaking is personal to the insured. "The policy is not an insurance of the specific thing without regard to the ownership, but is a special agreement of indemnity with the person insuring against such loss or damage as he may sustain." King v. Lancaster County Mutual Ins. Co., 45 Pa. Super. Ct. 464. But a sale of insured property does not carry with it the policy of insurance. Olyphant Lumber Co. v. People's Mutual Live Stock Ins. Co., 4 Pa.

Super. Ct. 100. Therefore, when the insured parts with his "property, and has no further interest in it, he can sustain no loss or damage by its destruction, but the loss, if any, is that of his grantee. In the absence of an assignment, the grantee cannot recover on the policy, because the insurer has no contract with him, and the grantor cannot recover because he has sustained no loss." King v. Lancaster, supra.

[5] It is equally true that the mortgagee clause of a policy, providing for payment of indemnity to the mortgagee in the event of loss, is not an assignment of the policy, yet that clause creates a separate and distinct agreement between the insurer and the mortgagee, binding even after the insured owner has alienated his property. Knights of St. Joseph B. & L. Ass'n v. Insurance Co., 66 Pa. Super. Ct. 90; Syndicate Ins. Co. v. Bohn, 65 F. 165, 12 C. C. A. 351, 27 L. R. A. 614; Pennsylvania, etc., v. Aachen & Ins. Co. (D. C.) 257 F. 189.

[6] Applying this law to the facts of the case, the policy of insurance, issued by the Springfield company to Lord Bros. with a mortgagee clause in favor of Crozer, became void as to Lord Bros. in respect to the property conveyed, but continued for the protection of the interest of the mortgagee. Thus, after the conveyance, there were two interests—one, the new interest of Turk and Saft, the grantees, the other, the old interest of Crozer, the mortgagee; the first covered by insurance issued to them in their names; the other covered by insurance issued to Lord Bros., and carried to Crozer by force of the mortgagee clause.

The defendant contends, however, that diversity of interest in the same insured property does not, under the terms of the quoted pro rata liability clause, prevent contribution from all companies issuing policies "covering the property," and for authority cites Hartford Insurance Co. v. Williams, 63 F. 925, 11 C. C. A. 503, the only case it has found on the subject. In this case the court decided that, where policies had been issued to different parties in interest—the grantor and the grantee of alienated property—the mortgagee under a mortgagee clause attached to the grantor's policy must pro rate with the policy covering the other interest. But it should be observed that the significant fact on which this decision was based was that, with the consent of the insurer, the policy of the grantor to which the mortgagee clause was attached was assigned to the grantee at the time of the conveyance, and thereby the policy to the grantor, quite ob-viously, continued in force for the protection of the grantee, and this policy and the other then covered his interest and the interest of no one else, except the contingent interest of the mortgagee. In the case at bar, the policy of Lord Bros. was not assigned to the plaintiffs on the sale of the property, but remained in the hands of the mortgagee solely to protect his interest in that capacity. It follows, therefore, that, while all four policies were issued to indemnify loss arising from damage to the same property, the policies at the time of the fire covered different interests in the property.

[7] Do they constitute double or contributing insurance requiring apportionment?

The Supreme Court of Pennsylvania, in Sloat v. Ins. Co., 49 Pa. 14, 88 Am. Dec. 477, and again in Meigs v. Ins. Co., 205 Pa. 378, 54 A. 1053, defined double insurance as follows: "Double insurance takes place when the assured makes two or more insurances on the same subject, the same risk, and the same interest. If there be double insurance, either simultaneously or by successive policies, in which priority of insurance is not provided for, all are insurers, and liable pro rata."

Courts and text-writers are in accord that contribution cannot be enforced unless the policies cover the same interest. Identity of interest is a requisite. Meigs v. Ins. Co., supra; Traders' Ins. Co. v. Pacaud, 150 Ill. 245, 37 N. E. 460, 41 Am. St. Rep. 355; Niagara Ins. Co. v. Scammon, 144 Ill. 500, 28 N. E. 919, 32 N. E. 914, 19 L. R. A. 114; Titus v. Glens Falls Ins. Co., 81 N. Y. 415; Fox v. Phenix Fire Ins. Co., 52 Me. 336; Wood on Insurance, 374; 4 Joyce on Insurance, § 3490; 1 Clement on Fire Insurance, 313. These authorities are supported by sound reason. Applying reason to the facts of this case, it appears that, except for the independent contract with the mortgagee, the Springfield policy issued to Lord Bros. covered the interest of no one. The interest of Lord Bros. in the property died when they alienated it, and their interest in the policy disappeared at the same time. King v. Lancaster, supra. Not having been assigned to the plaintiffs, the policy did not cover the latter's newly acquired interest in the property. There never was any privity of contract between them and the Springfield company; therefore we cannot conceive how they could maintain an action on the policy against that company. Lacking privity of contract and a right of action, we cannot see how their policies can be subjected to an apportionment with a policy issued to another by a company with which they have

no contractual relation. Nor does the insurance of the Springfield policy enure to the plaintiffs beneficially by reducing their mortgage in the event of payment of loss to the mortgagee. In this case the loss was so amply covered that the mortgagee has not made a claim upon the Springfield company under the mortgagee clause of its policy, yet, if he had done so, it would have developed that, by the terms of the policy, payment made by that company to the mortgagee would not be in relief of the owner of the premises by effecting a credit on the mortgage to the extent of the payment, but the mortgagee would be required to assign to the insurance company all his rights under the mortgage, and to the extent of payment the insurance company would be subrogated to the right of the mortgagee against the property.

Assuming, without deciding, that the Springfield policy is alive and valid as between the Springfield company and the mortgagee, we are of opinion that it is not contributing insurance with the policy which the defendant issued to the plaintiffs. On this decision hang the other questions raised by the assignments of error. Having dropped out of the case, they do not call for discussion or decision.

The judgment below is affirmed.