## SOUTHERN SURETY CO. et al. v. COMMERCIAL CASUALTY INS. CO. et al.

Circuit Court of Appeals, Third Circuit. February 6, 1929.

Rehearing Denied April 30, 1929.

No. 3944.

J. L. Parrish, of Des Moines, Iowa, and Donald Thompson, Calvert Thompson & Berger, Patterson, Crawford, Arensberg & Dunn, and Charles F. C. Arensberg, all of Pittsburgh, Pa., for appellants.

W. Clyde Grubbs, Albert C. Hirsch, John M. Freeman, and Watson & Freeman, all of Pittsburgh, Pa., for appellees.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

PER CURIAM. In the court below, the Commercial Casualty Insurance Company moved the court, and its motion was granted, to dismiss the bill brought by the Southern Surety Company and the National Surety Company, against it. Thereupon the latter companies took this appeal. The case was fully discussed, and the reasons which

led that court to dismiss the bill are fully discussed in its opinion, which is printed in the margin.[1] Finding ourselves in accord therewith, said opinion is adopted as expressive of our views, and the decree is affirmed.

[1] "This bill is filed by the plaintiffs to compel contribution by the Commercial Casualty Insurance Company, one of the defendants, it being claimed that the other defendant, the county of Allegheny is, under the facts of the case, a necessary party. The case is before us on the motion of the casualty company to dismiss the bill as to it.

"Briefly stated, the situation disclosed by the bill, and from which it is claimed the right of contribution arises, is as follows:

"During 1924 and 1925, and prior thereto, the county of Allegheny kept on deposit certain of its funds in the Carnegie Trust Company. To indemnify the county against loss, the trust company, as principal, gave three bonds, one for $1,100,000 with the Southern Surety Company, one for $150,000 with the National Surety Company, and one for $80,000 with the Commercial Casualty Insurance Company, as surety; copies of the three bonds being attached as exhibits to the bill.

"It is averred that each of the bonds were executed for the purpose of securing the same funds, viz., deposits made by the county in the said trust company; that in April, 1925, the trust company became insolvent and suspended business, and that its affairs are being liquidated by the commissioner of banking of Pennsylvania. That at the time of the failure, the said county had on deposit in the trust company a sum of money, the exact amount of which plaintiffs are unable now to state, but which they allege was in excess of the penalties upon bonds executed by the plaintiffs, to wit, in excess of the sum of $1,250,000.

"That thereafter, viz., on the 1st day of May, 1925, and again on the 14th of the same month, the county, acting through its proper officer, the county comptroller, made demand upon the plaintiff for the payment of the amount due to the county from the said trust company, on account of deposits made by the county, to the extent of the penalties on their bonds, and that plaintiffs are informed and believe that on the same dates, a similar demand was made on the defendant the Commercial Casualty Insurance Company for the payment of the amount due from the said trust company, to the extent of the penalty on its bond.

"That afterwards, the Southern Surety Company paid to the county, to apply on the amount of deposits due from the trust company, the sum of $1,099,427.32, with 6 per cent. interest thereon, and the National Surety Company paid in like manner the sum of $149,921.91 with interest; that the defendant the Commercial Casualty Insurance Company failed and refused to pay the county any sum whatever on account of its liability; that the secretary of banking, as plaintiffs are informed, on or about the 27th of June, 1926, paid to the county of Allegheny a dividend upon its deposit in the trust company, the sum of $132,930.74, and that the said payment of $132,930.74 more than pays and satisfies the amount due the county of Allegheny on account of said deposits.

"Plaintiffs aver that by reason of the facts thus set forth they are entitled to recover from Allegheny county the surplus in its hands after satisfying its claim against Allegheny county on account of said deposits, and is entitled to recover from the defendant contributions for its proportionate share of the amounts paid by the plaintiff to the county after crediting the Commercial Casualty Company with its proportion of the surplus recovered from the county.

"That about October 1, 1928, the complaints were reimbursed by the county of Allegheny out of the dividend received by it as aforesaid, viz., the Southern Surety Company receiving $39,196.09, and the National Surety Company, $5,344.92.

"The bill prays that the amount of the deposit made by Allegheny county at the time of failure be ascertained and determined, and that the amount in its hands above that sufficient to pay its claim against the trust company be determined, and that all further amounts received by the county be distributed between the plaintiffs, with due allowance to the defendant by way of credits, as their interests may appear, and that the liability of the defendant to the plaintiffs by way of contribution be fixed and determined.

"While a motion to dismiss admits those matters in the bill which are well pleaded, it does not admit conclusions of law, or averments as to the meaning of a contract when the contract itself is attached to the bill. And inasmuch as copies of the three surety contracts are attached to the bill, in determining whether a cause of action is set forth, the court is governed, not by the averments as to the meaning of the contracts, but by the true construction of the contracts themselves.

"I am constrained to hold that the bill does not disclose a cause of action for contribution against the Commercial Casualty Company, defendant, for the following reasons:

"First. The parties plaintiff and the casualty company, defendant, are not bound by a common burden in the same degree or by the same risk as is clearly disclosed by the contracts themselves. The policies of the plaintiff companies are blanket, unconditional, and unlimited. They assume liability for all deposits and property, and for all loss up to the penal amounts of their policies. The contract of defendant limits its liability to such deposits as result from 'cash and cash items' actually and regularly deposited. Its liability is also limited by numerous express conditions. Among these are a limited liability clause, a coinsurance clause, a pro rata clause, a subrogation clause, and a clause securing a right of benefit from other securities.

"The cases are numerous and comparatively uniform that where the parties do not stand in equali jure there can be no contribution. Equality in bearing a common burden is the principle upon which contribution rests. It does not rest on contract, but on the broad principle that equality is equity; and where a number of parties stand on the same footing as to liability, one of the number cannot be compelled to assume the whole burden, but may compel his associates to share with him in the loss which he is compelled to pay    Stone v. Fenno, 88 Mass. (6 Allen, 579); Bulkeley v. House, 62

Conn. 459, 26 A. 352, 21 L. R. A. 247; Turk v. Newark Fire Ins. Co. (D. C.) 4 F.(2d) 142; Meigs v. Insurance Co., 205 Pa. 378, 54 A. 1053; King v. Lancaster County Mut. Ins. Co., 45 Pa. Super. Ct. 464; 5 Pom. Eq. Juris. par. 2338, p. 5169.

"Second. The plaintiff's policies cover the whole risk, that is 'all the County funds and property of said County that may come into its hands,' and judgment may be confessed 'for the full amount of the money and interest and the full value of the securities, chattels and other properties that may be due and owing from' the trust company.

"The defendant's bond covers only 'such cash and cash items as shall have been actually and regularly deposited * * * in an account subject to check.' The one covers 'funds and property,' the other only 'cash and cash items.' In such a situation, under the Pennsylvania rule, where one policy covers only a portion of the risk, it is held not to be double insurance, and neither insurer can claim contribution from the other. Meigs v. Insurance Co., 205 Pa. 378, 54 A. 1053, and cases there cited.

"This rule has been held to apply, in the federal courts, to cases arising in Pennsylvania. Turk v. Newark Fire Insurance Co. (D. C.) 4 F.(2d) 142. The same rule is laid down by Judge Woolley in this circuit, in Newark Fire Insurance Co. v. Turk (C. C. A.) 6 F.(2d) 533, 43 A. L. R. 496, where the authorities are cited.

"Third. Under the coinsurance clause in defendant's contract, the defendant's obligation is separate and independent from the plaintiffs', and the payment by the latter of the defendant's pro rata share would not release it from its liability to the insurer. Each insurer had the right to make its own contract and to designate the conditions upon which it should be bound. The defendant having protected itself with the coinsurance clause, it became an independent obligor, and its contract is not affected by the contract of another insurer. Under the coinsurance clause of defendant's contract, it became liable, not for the entire loss up to the amount of its bond, but only for a certain percentage of the loss based on the total insurance which was carried. This principle is clearly established by the authorities. Scruggs & Echols v. American Insurance Co. (C. C. A.) 176 F. 224, 36 L. R. A. (N. S.) 92. In this case the authorities are gathered, and referring to the pro rata clause, the court said: 'Where there are several policies containing this clause, they are all, and each, liable to pay the ratable portion mentioned in the clause, though it happen that some have voluntarily paid more than their share, and that there is no contribution between policies containing this clause.' See also Rochester German Insurance Co. v. Schmidt [C. C. A.] 175 F. 720.

"Fourth. Defendant's contract with Allegheny county is a separate and independent contract. There is no privity between plaintiffs and defendant, and plaintiffs could only recover by being subrogated to the rights of the county. The sole right of action of the county against the defendant would be under its contract with the defendant, and the plaintiffs' rights, if any, against the defendant, would be because they succeeded to the rights of the county of Allegheny. It would therefore be necessary both to aver and prove that defendant is liable on its contract to the county of Allegheny, and that they have succeeded to these rights through the right of subrogation.

"Fifth. It is a fundamental principle that in order to create a right of contribution, the plaintiffs must have been legally liable to pay, and must have actually paid under compulsion and obligation, that for which both plaintiffs and defendant were equally liable. This does not sufficiently appear by the averments of the bill taken in connection with the three contracts, the interpretation as to the true meaning of which is a question of law for the court.

"The motion to dismiss the plaintiffs' bill as to the Commercial Casualty Insurance Company, defendant, is therefore sustained, and the bill dismissed, with costs."